## NO. 19-12984-CC

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**EDWARD LEE GILLIAM,**

> **Plaintiff,**

**vs.**                                    **Case No: 2:16-cv-00255-JES-UAM**


**U.S. DEPARTMENT OF VETERANS AFFAIRS,**

> **Defendant,**


**On Appeal of the United States District Court for the
Middle District of Florida Fort Myers Division**


**APPENDIX OF EDWARD GILLIAM
PLAINTIFF-APPELLANT**


**Edward Lee Gilliam
Pro Se' for Appellant
Edward Lee Gilliam
322 SE 21st Street
Cape Coral, Florida 33990
(239) 223-0427**

2

**DISTRICT DOCKET SHEET**

APPEAL, CLOSED, MAIL

## U.S. District Court
## Middle District of Florida (Ft. Myers)
## CIVIL DOCKET FOR CASE #: 2:16-cv-00255-JES-UAM

Gilliam v. U.S. Department of Veterans Affairs
Assigned to: Judge John E. Steele
Referred to: Magistrate Judge Unassigned Magistrate
Demand: $800,000
Case in other court: 19-12984-F
Cause: 42:2000e Job Discrimination (Employment)

Date Filed: 04/04/2016
Date Terminated: 03/27/2019
Jury Demand: Plaintiff
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Edward Lee Gilliam**                          represented by **Edward Lee Gilliam**
                                                322 S.E. 21st Street
                                                Cape Coral, FL 33990
                                                239/223-0427
                                                PRO SE

V.

**Defendant**

**U.S. Department of Veterans Affairs**          represented by **Kyle Scott Cohen**
                                                US Attorney's Office - FLM
                                                Room 3-137
                                                2110 First Street
                                                Ft Myers, FL 33901
                                                239/461-2200
                                                Email: Kyle.Cohen@usdoj.gov
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Sean Flynn**
                                                US Attorney's Office - FLM
                                                Suite 3200
                                                400 N Tampa St
                                                Tampa, FL 33602-4798
                                                813-274-6000
                                                Email: sean.flynn2@usdoj.gov
                                                *TERMINATED: 05/30/2018*
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **David P. Sullivan**
                                                US Attorney's Office
                                                2110 First Street
                                                Room 3-137
                                                Fort Myers, Fl 33901

Email: david.sullivan3@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**David J. Shulkin**
*Secretary*

represented by **David P. Sullivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/04/2016 | 1 | COMPLAINT against U.S. Department of Veterans Affairs with Jury Demand filed by Edward Lee Gilliam. (Attachments: # # 1 Complaint # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 5, # 4 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10, # 10 Civil Cover Sheet) (RMT).(NOTE: page 10 was omitted by the plaintiff in the submitted complaint) . (Entered: 04/05/2016) |
| 04/04/2016 | 2 | MOTION to proceed in forma pauperis and Financial Affidavit pursuant to 28 U.S.C, 1915 by Edward Lee Gilliam. (RMT) Motions referred to Magistrate Judge Carol Mirando. (Entered: 04/05/2016) |
| 04/04/2016 | 3 | MOTION to Appoint Counsel and Affidavit in Support by Edward Lee Gilliam. Motions referred to Magistrate Judge Carol Mirando. (RMT). (Entered: 04/05/2016) |
| 04/15/2016 | 4 | **RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 2. Notice of pendency of other actions due by 4/29/2016. Signed by All Divisional Judges on 4/15/2016. (WRW) (Entered: 04/15/2016)** |
| 04/15/2016 | 5 | **INTERESTED PERSONS ORDER Certificate of interested persons and corporate disclosure statement due by 4/29/2016. Signed by All Divisional Judges on 4/15/2016. (WRW) (Entered: 04/15/2016)** |
| 04/18/2016 | 6 | **STANDING ORDER: Filing of documents that exceed twenty-five pages. Signed by All Divisional Judges on 4/18/2016. (drn) (Entered: 04/18/2016)** |
| 04/29/2016 | 7 | CERTIFICATE of interested persons and corporate disclosure statement re 5 Interested persons order by Edward Lee Gilliam. (drn) (Entered: 04/29/2016) |
| 04/29/2016 | 8 | NOTICE of pendency of related cases re 4 Related case order and track 2 notice per Local Rule 1.04(d) by Edward Lee Gilliam. Related case(s): yes (drn) (Entered: 04/29/2016) |
| 11/08/2016 | 9 | **REPORT AND RECOMMENDATIONS re 2 Plaintiff's Motion to Proceed In Forma Pauperis and Financial Affidavit pursuant to 28 U.S.C. § 1915 and 3 Motion for Appointment of Counsel and Affidavit in Support. Signed by Magistrate Judge Carol Mirando on 11/8/2016. (HJ) (Entered: 11/08/2016)** |
| 11/21/2016 | 10 | RESPONSE re 9 REPORT AND RECOMMENDATIONS re 2 MOTION for leave to proceed in forma pauperis/affidavit of indigency filed by Edward Lee Gilliam, 3 MOTION to Appoint Counsel filed by Edward Lee Gilliam filed by Edward Lee Gilliam. (drn) (Entered: 11/21/2016) |
| 12/12/2016 | 11 | **OPINION AND ORDER denying 3 Motion to appoint counsel; adopting 9 Report and Recommendations; denying 2 Motion for leave to proceed in forma pauperis/affidavit of indigency filed by Edward Lee Gilliam; and plaintiff shall pay the full filing fee of $400.00 to the Clerk within 30 days of this Opinion and Order. Plaintiff shall file a Second Amended Complaint within 45 days of this Opinion and order that incorporates all** |

| | | allegations and facts within a single document. Signed by Judge John E. Steele on 12/12/2016. (RKR) (Entered: 12/12/2016) |
|---|---|---|
| 12/27/2016 | 12 | RESPONSE re 11 Order on motion to appoint counsel, Order on Report and Recommendations, Order on motion for leave to proceed in forma pauperis/affidavit of indigency filed by Edward Lee Gilliam. (RMT) (Entered: 12/27/2016) |
| 12/29/2016 | 13 | **OPINION AND ORDER denying 12 Response construed as a motion for reconsideration. The deadline to file an amended motion and affidavit to proceed as an indigent based on a change in financial circumstances or pay the full filing fee is extended through January 27, 2017; and the deadline to file a Second Amended Complaint is extended through February 10, 2017. Signed by Judge John E. Steele on 12/29/2016. (RKR) (Entered: 12/29/2016)** |
| 01/27/2017 | | FEES paid by Edward Lee Gilliam (Filing fee $400 receipt number FtM010485/Intake) (drn) (Entered: 02/07/2017) |
| 01/31/2017 | 14 | **ORDER OF DISMISSAL dismissing case without prejudice for failure to pay the requisite filing fee. The Clerk shall enter judgment accordingly, and close the file. Signed by Judge John E. Steele on 1/31/2017. (RKR)** Modified on 2/8/2017. Pleading vacated per Order 16 (drn). (Entered: 01/31/2017) |
| 01/31/2017 | 15 | JUDGMENT (Signed by Deputy Clerk) (drn) Modified on 2/8/2017. Pleading vacated per Order 16 (drn). (Entered: 01/31/2017) |
| 02/07/2017 | 16 | **ORDER vacating 14 Order of Dismissal; vacating 15 Judgment. The Clerk shall make a notation and reopen the case. Plaintiff shall file the Second Amended Complaint by the extended deadline of February 24, 2017. Signed by Judge John E. Steele on 2/7/2017. (RKR) (Entered: 02/07/2017)** |
| 02/27/2017 | 17 | SECOND AMENDED COMPLAINT against U.S. Department of Veterans Affairs with Jury Demand filed by Edward Lee Gilliam. Related document: 1 Complaint filed by Edward Lee Gilliam. (Attachments: # 1 Exhibit Documentation of Case Events (Part 1), # 2 Exhibit Documentation of Case Events (Part 2), # 3 Exhibit Examination of Witnesses (Part 1), # 4 Exhibit Examination of Witnesses (Part 2), # 5 Exhibit Psychological Evaluation), #(6) Mailing Envelope) (drn). (NOTE: Drop Box Stamped on 2/24/17 - FILED Stamp on 2/27/17 and rec'd in U.S. Mail by Judge John E. Steele) (Entered: 03/03/2017) |
| 04/19/2017 | 18 | **ORDER to show cause why the case should not be dismissed for failure to prosecute as to Edward Lee Gilliam. Or, plaintiff shall obtain summonses and execute service of process within 30 days of this Order. Show Cause Response due by 5/3/2017. Signed by Judge John E. Steele on 4/19/2017. (RKR) (Entered: 04/19/2017)** |
| 05/02/2017 | 19 | LETTER MOTION for Extension of Time to File Response/Reply as to 18 Order to show cause by Edward Lee Gilliam. (MLS) Motions referred to Magistrate Judge Carol Mirando. (Entered: 05/02/2017) |
| 05/02/2017 | 20 | **ENDORSED ORDER granting 19 Plaintiff's Motion for Extension of Time. For good cause shown, Plaintiff shall have up to and including June 16, 2017 to obtain summonses and execute service of process. The failure to timely execute service of process will result in a dismissal without prejudice and without further notice. The Clerk of Court is directed to mail a copy of this Order and the Order to Show Cause (Doc.18) to Plaintiff. Signed by Magistrate Judge Carol Mirando on 5/2/2017. (HJ) (Entered: 05/02/2017)** |
| 05/12/2017 | 21 | MOTION for default as to US Department of Veteran's Affairs failure to respond re 17 SECOND Amended Complaint by Edward Lee Gilliam. (MLS) Motions referred to |

| | | |
|---|---|---|
| | | Magistrate Judge Carol Mirando. (Entered: 05/12/2017) |
| 05/15/2017 | 22 | **ORDER denying without prejudice 21 Plaintiff's Motion for Default. Signed by Magistrate Judge Carol Mirando on 5/15/2017. (HJ)** (Entered: 05/15/2017) |
| 05/30/2017 | 23 | SUMMONS issued as to U.S. Department of Veterans Affairs. (MLS) (Entered: 05/30/2017) |
| 06/15/2017 | 24 | NOTICE of Certification of Service Clarification and Confirmation by Edward Lee Gilliam re 20 Order on Motion for Extension of Time to File Response/Reply, 17 Amended Complaint (Attachments: # 1 Exhibit 1)(MLS) (Entered: 06/15/2017) |
| 07/31/2017 | 25 | MOTION to dismiss for failure to state a claim , MOTION to dismiss for lack of jurisdiction , MOTION for More Definite Statement by U.S. Department of Veterans Affairs. (Flynn, Sean) (Entered: 07/31/2017) |
| 08/07/2017 | 26 | MOTION for summary judgment by Edward Lee Gilliam. (MLS) (Entered: 08/07/2017) |
| 08/07/2017 | 27 | SUMMARY JUDGMENT NOTICE re 26 MOTION for summary judgment. (MLS) (Entered: 08/07/2017) |
| 08/21/2017 | 28 | RESPONSE in Opposition re 26 MOTION for summary judgment , *AND CROSS-MOTION FOR SUMMARY JUDGMENT* filed by U.S. Department of Veterans Affairs. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC, # 30 Exhibit DD, # 31 Exhibit EE, # 32 Exhibit FF, # 33 Exhibit GG)(Flynn, Sean) Modified on 10/30/2017 as to event type per law clerk/kp. (MLS). (Entered: 08/21/2017) |
| 08/22/2017 | 29 | MOTION for miscellaneous relief, specifically to add "Witness Examination in Sequence" for evidence and judicial assistance as Exhibit 15 by Edward Lee Gilliam. (Attachments: # 1 Witness Examination in Sequence)(SPB) (Entered: 08/23/2017) |
| 09/19/2017 | 30 | **ORDER directing responses to 25, 29 on or before October 3, 2017. If no responses are filed, the Court will rule on the motions without further notice and without the benefit of a response. Signed by Judge John E. Steele on 9/19/2017. (KP)** (Entered: 09/19/2017) |
| 09/19/2017 | 31 | RESPONSE in Opposition re 29 MOTION for miscellaneous relief, specifically to add "Witness Examination in Sequence" for evidence and judicial assistance as Exhibit 15 filed by U.S. Department of Veterans Affairs. (Attachments: # 1 Exhibit A)(Flynn, Sean) (Entered: 09/19/2017) |
| 10/02/2017 | 32 | RESPONSE in Opposition re 25 MOTION to dismiss for failure to state a claim MOTION to dismiss for lack of jurisdiction MOTION for More Definite Statement filed by Edward Lee Gilliam. (MLS) (Entered: 10/02/2017) |
| 11/06/2017 | 33 | **ORDER granting 29 Motion to add witness examination in sequence for evidence, construed as a motion to add it as an exhibit to plaintiff's 26 Motion for summary judgment, and otherwise denying. The Clerk shall issue a Summary Judgment Notice and mail a copy to plaintiff. Plaintiff shall respond to the cross-motion within 14 days of its filing. Signed by Judge John E. Steele on 11/6/2017. (RKR)** (Entered: 11/06/2017) |
| 11/06/2017 | 34 | NOTICE OF SUMMARY JUDGMENT re 33 Order on Motion for Miscellaneous Relief (MLS) (Entered: 11/06/2017) |
| | | |

| | | |
|---|---|---|
| 11/17/2017 | 35 | RESPONSE to Cross-Motion for Summary Judgment as so ordered by the Court re 28 MOTION for summary judgment filed by Edward Lee Gilliam. (MLS) (Entered: 11/17/2017) |
| 11/21/2017 | 36 | NOTICE by U.S. Department of Veterans Affairs re 28 MOTION for summary judgment *(Filing Exhibit HH)* (Attachments: # 1 Exhibit HH)(Flynn, Sean) (Entered: 11/21/2017) |
| 12/01/2017 | 37 | RESPONSE AND PROTEST to the defendant's notice of filing exhibit HH now re 36 Notice (Other) filed by Edward Lee Gilliam. (MLS) (Entered: 12/01/2017) |
| 12/12/2017 | 38 | **OPINION AND ORDER granting 25 Defendant's Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff may file a Second Amended Complaint that fixes the pleading deficiencies discussed in this Opinion on or before Wednesday, December 27, 2017. Claims barred by sovereign immunity should not be reasserted. The Court denies without prejudice as moot 26 Plaintiff's Motion for Summary Judgment; 28 Defendant's Motion for Summary Judgment. Signed by Judge John E. Steele on 12/12/2017. (KP) (Entered: 12/12/2017)** |
| 12/20/2017 | 39 | MOTION for miscellaneous relief, specifically legal clairity and a request for an extension of time for second amended complaint by Edward Lee Gilliam. (MLS) (Entered: 12/20/2017) |
| 12/21/2017 | 40 | **ORDER granting in part and denying in part 39 Plaintiff's Motion for Clarity and Extension of Time to File Second Amended Complaint. Plaintiff's "Motion for Clarity" is denied. Plaintiff's Motion for Extension of Time to File Second Amended Complaint is granted. Plaintiff has until January 10, 2018 to file a Second Amended Complaint, subject to the terms of the Court's December 12, 2017 Order. Signed by Judge John E. Steele on 12/21/2017. (KP) (Entered: 12/21/2017)** |
| 01/10/2018 | 41 | SECOND AMENDED COMPLAINT against U.S. Department of Veterans Affairs with Jury Demand. filed by Edward Lee Gilliam.(MLS) (Entered: 01/10/2018) |
| 01/16/2018 | 42 | **ORDER to show cause why the case should not be dismissed for failure to prosecute as to Edward Lee Gilliam. Alternatively, directing the filing of a Case Management Report with jointly agreed upon dates. See Order for details. Show Cause Response due by 1/30/2018. Signed by Judge John E. Steele on 1/16/2018. (RKR) (Entered: 01/16/2018)** |
| 01/23/2018 | 43 | Consent MOTION for Extension of Time to File Answer re 41 Amended Complaint by U.S. Department of Veterans Affairs. (Flynn, Sean) Motions referred to Magistrate Judge Carol Mirando. (Entered: 01/23/2018) |
| 01/23/2018 | 44 | **ENDORSED ORDER granting 43 Defendant's Consent Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's Second Amended Complaint. For good cause shown and because the motion is unopposed, Defendant shall have up to and including February 2, 2018 to respond to the Second Amended Complaint. Signed by Magistrate Judge Carol Mirando on 1/23/2018. (HJ) (Entered: 01/23/2018)** |
| 01/29/2018 | 45 | NOTICE of pendency of related cases re 4 Related case order and track 2 notice per Local Rule 1.04(d) by U.S. Department of Veterans Affairs. Related case(s): no (Flynn, Sean) (Entered: 01/29/2018) |
| 01/29/2018 | 46 | CERTIFICATE of interested persons and corporate disclosure statement re 5 Interested persons order by U.S. Department of Veterans Affairs. (Flynn, Sean) (Entered: 01/29/2018) |
| 01/29/2018 | 47 | CASE MANAGEMENT REPORT filed by Edward Lee Gilliam. (MLS) (Entered: 01/29/2018) |
| | | |

| 01/29/2018 | 48 | CERTIFICATE of interested persons and corporate disclosure statement re 4 Related case order and track 2 notice by Edward Lee Gilliam. (MLS) (Entered: 01/29/2018) |
| 02/01/2018 | 49 | MOTION to Dismiss Second Amended Complaint or, in the Alternative, Motion for a more definite Statement and Memorandum of Law by U.S. Department of Veterans Affairs. (Sullivan, David) (Entered: 02/01/2018) |
| 02/22/2018 | 50 | **CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 7/31/2018, Dispositive motions due by 8/31/2018, Final Pretrial Conference set for 1/22/2019 at 09:00 AM in Ft. Myers Courtroom 6 A before Judge John E. Steele, Jury Trial set for trial term beginning 2/4/2019 before Judge John E. Steele, Conduct mediation hearing by 8/16/2018. Lead counsel to coordinate dates. Signed by Judge John E. Steele on 2/22/2018. (DH) (Entered: 02/22/2018)** |
| 02/23/2018 | 51 | **ORDER directing Edward Lee Gilliam to respond to 49 MOTION to Dismiss Second Amended Complaint or, in the Alternative, Motion for a more definite Statement and Memorandum of Law. Responses due by 3/9/2018. Signed by Judge John E. Steele on 2/23/2018. (RKR) (Entered: 02/23/2018)** |
| 02/23/2018 | 52 | NOTICE of Initial Disclosures by Edward Lee Gilliam (MLS) (Entered: 02/23/2018) |
| 03/07/2018 | 53 | Plaintiff's RESPONSE to Defendant's Absurd Motion re 49 MOTION to Dismiss Second Amended Complaint or, in the Alternative, Motion for a more definite Statement and Memorandum of Law filed by Edward Lee Gilliam. (MLS) (Entered: 03/07/2018) |
| 03/26/2018 | 54 | Plaintiff's NOTICE of First Set of Combined Requests for Interrogatories and Request for Production by Edward Lee Gilliam (MLS) (Entered: 03/26/2018) |
| 05/15/2018 | 55 | NOTICE of filing Interogatories of Individuals with Discoverable Information by Edward Lee Gilliam (MLS) (Entered: 05/15/2018) |
| 05/30/2018 | 56 | Notice of substitution of AUSA. Kyle Scott Cohen substituting for Sean P. Flynn. (Cohen, Kyle) (Entered: 05/30/2018) |
| 05/30/2018 | 57 | NOTICE of Appearance by David P. Sullivan on behalf of U.S. Department of Veterans Affairs (Sullivan, David) (Entered: 05/30/2018) |
| 06/22/2018 | 58 | MOTION to Compel defendant to produce discoverable information by Edward Lee Gilliam. (MLS) Motions referred to Magistrate Judge Carol Mirando. (Entered: 06/22/2018) |
| 07/06/2018 | 59 | RESPONSE in Opposition re 58 MOTION to Compel defendant to produce discoverable information filed by U.S. Department of Veterans Affairs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Sullivan, David) (Entered: 07/06/2018) |
| 07/18/2018 | 60 | NOTICE of mediation conference/hearing to be held on August 1, 2018 at 9:00am before James Nulman. (Sullivan, David) (Entered: 07/18/2018) |
| 07/20/2018 | 61 | AMENDED/MODIFIED MOTION 58 MOTION to Compel defendant to produce discoverable information by Edward Lee Gilliam. (MLS) (Entered: 07/20/2018) |
| 08/01/2018 | 62 | MEDIATION report Hearing held on 08-01-2018. Hearing outcome: Impasse.. (Nulman, James) (Entered: 08/01/2018) |
| 08/03/2018 | 63 | **OPINION and ORDER granting defendant's 49 motion to dismiss. See Opinion and Order for details. Signed by Judge John E. Steele on 8/3/2018. (CMG) (Entered: 08/03/2018)** |
| 08/09/2018 | 64 | MOTION to extend time to complete Third Amended Complaint by Edward Lee Gilliam. (MLS) Motions referred to Magistrate Judge Carol Mirando. (Entered: 08/13/2018) |

| | | |
|---|---|---|
| 08/13/2018 | 65 | **ORDER granting 64 Plaintiff's Motion for Extended Time to Complete Third Amended Complaint. Plaintiff shall have up to and including August 24, 2018 to file a Third Amended Complaint. Signed by Magistrate Judge Carol Mirando on 8/13/2018. (APH)** (Entered: 08/13/2018) |
| 08/24/2018 | 66 | THIRD AMENDED COMPLAINT against David J. Shulkin, U.S. Department of Veterans Affairs with Jury Demand filed by Edward Lee Gilliam. Related document: 41 Amended Complaint filed by Edward Lee Gilliam.(MLS) (Entered: 08/27/2018) |
| 08/31/2018 | 67 | MOTION to Dismiss Third Amended Complaint by David J. Shulkin, U.S. Department of Veterans Affairs. (Sullivan, David) (Entered: 08/31/2018) |
| 08/31/2018 | 68 | Joint MOTION to stay *Case Management Order* by David J. Shulkin, U.S. Department of Veterans Affairs. (Sullivan, David) (Entered: 08/31/2018) |
| 09/07/2018 | 69 | **ORDER granting 68 Joint Motion to Stay the Case Management Order and Memorandum of Law. The Clerk is directed to add a stay flag to the docket. The remaining deadlines in the Case Management and Scheduling Order (Doc. 50) are stayed pending judicial resolution of the motion to dismiss (Doc. 67) or until further Order of the Court. Signed by Magistrate Judge Carol Mirando on 9/7/2018. (APH)** (Entered: 09/07/2018) |
| 09/10/2018 | | Case Stayed per 69 Order (MLS) (Entered: 09/10/2018) |
| 09/14/2018 | 70 | MOTION for Extension of Time to File Response/Reply as to 67 MOTION to Dismiss Third Amended Complaint by Edward Lee Gilliam. (MLS) Motions referred to Magistrate Judge Carol Mirando. (Entered: 09/17/2018) |
| 09/14/2018 | 71 | CERTIFICATE of service by Edward Lee Gilliam re 70 MOTION for Extension of Time to File Response/Reply as to 67 MOTION to Dismiss Third Amended Complaint . (MLS) (Entered: 09/17/2018) |
| 09/17/2018 | 72 | **ORDER granting 70 Plaintiff's Motion for Extension of Time. Plaintiff shall have up to and including September 28, 2018 to file a response to Defendants' Motion to Dismiss the Third Amended Complaint. Signed by Magistrate Judge Carol Mirando on 9/17/2018. (APH)** (Entered: 09/17/2018) |
| 09/28/2018 | 73 | RESPONSE in Opposition re 67 MOTION to Dismiss Third Amended Complaint filed by Edward Lee Gilliam. (laf) (Entered: 10/02/2018) |
| 01/29/2019 | 74 | Case Reassigned to Unassigned Magistrate. New case number: 2:16-cv-255-FtM-29UAM. Magistrate Judge Carol Mirando no longer assigned to the case. Motion(s) REFERRED: 61 MOTION to Amend/Correct 58 MOTION to Compel defendant to produce discoverable information, 58 MOTION to Compel defendant to produce discoverable information. Motion(s) referred to Unassigned Magistrate Judge. (LMF) (Entered: 01/29/2019) |
| 03/27/2019 | 75 | **OPINION and ORDER granting defendant's 67 motion to dismiss. The Clerk is directed to enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file. See Opinion and Order for details. Signed by Judge John E. Steele on 3/27/2019. (CMG)** (Entered: 03/27/2019) |
| 03/27/2019 | 76 | JUDGMENT ( Signed by Deputy Clerk) (MLS) (Entered: 03/27/2019) |
| 03/28/2019 | 77 | MOTION for Taxation of Costs by U.S. Department of Veterans Affairs. (Attachments: # 1 Exhibit A - Invoices)(Sullivan, David) (Entered: 03/28/2019) |
| 04/01/2019 | 78 | MOTION for miscellaneous relief, specifically for reason why certain parts of the Plaintiff's evidence ignored by Edward Lee Gilliam. (MLS) (Entered: 04/01/2019) |

| 04/01/2019 | 79 | CERTIFICATE of service by Edward Lee Gilliam re 78 MOTION for miscellaneous relief, specifically for reason why certain parts of the Plaintiff's evidence ignored (by Edward Lee Gilliam). (MLS) (Entered: 04/01/2019) |
| 04/16/2019 | 80 | **ORDER denying 77 Motion for Taxation of Costs. Signed by Judge John E. Steele on 4/16/2019. (RKR) (Entered: 04/16/2019)** |
| 04/18/2019 | 81 | **OPINION and ORDER denying plaintiff's 78 Motion for Reason why Certain Parts of the Plaintiff's Evidence Ignored. See Opinion and Order for details. Signed by Judge John E. Steele on 4/18/2019. (CMG) (Entered: 04/18/2019)** |
| 04/25/2019 | 82 | Plaintiff's MOTION for miscellaneous relief, specifically for the record and court reconsideration by Edward Lee Gilliam. (MLS) (Entered: 04/25/2019) |
| 05/06/2019 | 83 | **ORDER denying plaintiff's 82 Motion for the Record and Court Reconsideration. See Order for details. Signed by Judge John E. Steele on 5/6/2019. (CMG) (Entered: 05/06/2019)** |
| 05/15/2019 | 84 | MOTION for miscellaneous relief, specifically for need to correct clear error or prevent manifest injustice by Edward Lee Gilliam. (MLS) (Entered: 05/16/2019) |
| 06/13/2019 | 85 | **ORDER denying plaintiff's 84 Motion for Need to Correct Clear Error or Prevent Manifest Injustice. See Order for details. Signed by Judge John E. Steele on 6/13/2019. (CMG) (Entered: 06/13/2019)** |
| 08/07/2019 | 86 | NOTICE OF APPEAL as to 85 Order on Motion for Miscellaneous Relief by Edward Lee Gilliam. Filing fee not paid. (MLS) (Entered: 08/07/2019) |
| 08/07/2019 | 87 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 86 Notice of Appeal. (Attachments: # 1 Notice of Appeal, # 2 Docket Sheet, # 3 Order DE 85)(MLS) (Entered: 08/07/2019) |
| 08/07/2019 |  | USCA appeal fees received $ 505 receipt number FtM013957 re 86 Notice of appeal filed by Edward Lee Gilliam (MLS) (Entered: 08/08/2019) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 10/08/2019 11:17:06 | | |
| **PACER Login:** | gilliamedward:5268916:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-cv-00255-JES-UAM |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**DOCKET #66**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA DIVISION

Edward Lee Gilliam,
    Plaintiff

                              v.        Case No. 2:16-cv-255-FtM-99cm

U.S. Department of Veterans Affairs,
David Shulkin, Secretary
    Defendant(s)

                                   JURY TRIAL DEMANDED
                                        yes

## EMPLOYMENT DISCRIMINATION THIRD AMENDED COMPLAINT

1.    This employment lawsuit is based on:

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin.

**NOTE**: *In order to bring suit in federal district court under Title VII, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

Other (Describe):    Reversal of Agency's Decision of Removal

                      High Crimes and other violations-(Sovereign Immunity Protection)

### PARTIES

2.    Plaintiff's name:        Edward Lee Gilliam

       Plaintiff's address:      322 S.E. 21st Street

                            Cape Coral, Florida  33990

       Telephone number:     (239) 223-0427

15

3. Defendant's info:       U.S. Department of Veterans Affairs,

                                         Secretary of Veterans Affairs

                                         David Shulkin

      Defendant's address:    810 Vermont Avenue, NW

                                         Washington, DC  20420

      Telephone number:     (269) 966-5600

4. If you are claiming that the discriminatory conduct occurred at a different location, please state the address where the discriminatory conduct occurred:

                     3033 Winkler Avenue

                     Fort Myers, Florida  33916

                     Lee County Florida

5. When did the discrimination occur?  November 25, 2011 through October 27, 2012

### ADMINISTRATIVE PROCEDURES

6. Did you file a charge of discrimination against the defendant(s) with the Florida Commission on Human Rights? No

7. Did you file a charge of discrimination against the defendant(s) with the Equal Employment Opportunity Commission or other federal agency? Yes

    Date Filed: informal request made on June 15, 2012, formal complaint on December 12, 2012 and review of final order of MSPB board on March 9, 2015.

8. Have you received a Notice of Right-to-Sue Letter? Yes

    If yes, please attach a copy of the letter to this complaint. (Note: On Record)

16

**Senior United States District Judge John E. Steele thank you, your Honor for allowing Mr. Edward Lee Gilliam to submit a Third Amended Complaint; your patience and understanding in this case has been observed and is recognized as remarkable, salute.**

1.) Here now is a brief origin and synopsis of the Plaintiff's Third Amended Complaint as an introduction. It is a fact that crafting an investigation to meet a predetermined outcome is corruption and a crime. The Veterans Affairs has paid out one (1) million dollars in reference to Chief Robert Shogren engineering a Pattern, Practice and Culture of Retaliation against staff members who contact the EEOC against him. Chief Shogren is responsible for engineering a Hostile Work Environment for Officer Ed Gilliam when he took outside revengeful allegations from a vindictive husband and hid the defamatory allegation from the accused victim Officer Edward Lee Gilliam for ten (10) months, all the while informing the supervisory staff of the incendiary allegations of adultery and sex on VA property.

2.) It is a fact according to the VA Code of Conduct that VA supervisors are to promptly counsel any employee upon knowledge of any misconduct. **The initial police investigation** of two staff members allegedly having sex on VA property and only one of the two are targeted for removal, while the other one is given only three days suspension is a text book example of a police investigative tort in discrimination.

3.) Director Susanna Klinker was aware of Officer Ed Gilliam disparate action of contacting the EEOC on June 15, 2012. As she was aware of at the same time Chief Shogren was being investigated for engineering a Pattern, Practice and Culture of Retaliation to any staff members who contacted the EEOC against him in reference to nine (9) employees at Bay Pines.

4.) It is a fact Director Klinker committed an EEOC Non-Adherence to her Religious beliefs violation specifically her emphatic emphasis upon the sin of adultery when she distinctly pointed out at the

17

Verbal Response Hearing of Mr. Gilliam in reference to stating to him directly that he was being inconsistent by referring to Jeff Marsh in his Written Response as the estranged ex-husband when in actuality at the time he stated the allegations to Staff Member Gina Berchtold he was her HUSBAND!

5.) In addition it is a fact Sgt. Brad Slam (one of her supervisors) stated to the effect that: he was no longer interested in having theological conversation with Ed Gilliam because he was in sin with Liz Marsh and that is also an EEOC Non-Adherence to a Religious Belief Violation. In correlation later on it is a fact Lieutenant Pete Quimby and Sergeant Brad Slam lied and hid government keys from Officer Ed Gilliam and caused him to miss a scheduled EEOC meeting with Supervisor Joan Harris.

6.) It is a fact by arbitrarily honoring Chief Shogren's removal request that was reasonably motivated and engineered by his personal malice and responding with his typical Pattern, Practice and Culture of Retaliation against any employee reporting him to the EEOC for help coupled with Director Klinker's EEOC Non-Adherence to her personal Religious Beliefs Violation Ms. Klinker therefore simply echoed Chief Shogren's unjust character assassination of a low level subordinate, based on partial truths: faked, exaggerated, perjured and lies distorted and magnified for impact or simply put it was a bureaucratic decision reflecting unity of effort amongst the Veteran Affairs Administrative Hierarchy; **but more accurately expressing personal passions for offences that happen to violate EEOC laws.**

7.) Without further ado let's consider the violations here and now!

## A. Plaintiff's Wrongful Termination- is based on a "but for" Hostile Work Environment and Harassment Claim.

8.) Veterans Affairs Police Chief Robert Shogren engineered as he has been known to have done before on employee's (Case: 8:10-cv-01482-MSS-TBM) a Pattern, Practice and Culture of Retaliation before

18

Officer Gilliam contacted the EEOC followed by an even more intense and Ratcheted Up- Pattern, Practice and Culture of Retaliation after the EEOC contact on June 15, 2012. This is a clear and reasonable motive; as the cause and effect in this entire case. The whole case developed based on this corresponding truth and reason.

9.) **The Plaintiffs Case is a textbook example of a set up for Law Enforcement Harassment or tort which gradually develops from November 25, 2011 through October 27, 2012 escalating because of an EEOC contact for help on June 15, 2012 and is a "But-For" causation example.** The secret and menacing placement of the figurative **"Kick Me Sign"** (guilty of adultery and sex on VA property) on the Plaintiffs back is prima facie' evidence and would reasonably provoke future harassment; and clearly shaped the entire plot of the Plaintiffs Case as taking place in a Hostile Work Environment. In addition the acknowledgment of the husband requesting the VA Police to take leniency in disciplinary actions for his wife; do to she was the mother (female) of his child screams of a Police Investigative Tort revealing **discrimination.**

10.) According to the EEOC-"Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive." **The Plaintiffs entire 2012 documentation of case events and harassing irregularities in this case demonstrates that very fact (please see Documentation of Case Events).** The mental effect or men's rea' that was produced by alerting the supervisory staff against the unknowing Plaintiff, by conveying to the supervisory staff the salacious allegations against the Plaintiff committing adultery and having sex on VA property are a self-evident truths of cause and effect for Harassment and present the elements for a Hostile Work Environment based on reason alone. This prejudice  Hostile Work Environment would continue on to produce Harassment against the Plaintiff in the months to come; and that is exactly what happened ending in a final result, of removal; the final expression of a

19

corresponding truth to clearly behold. It is the sincere hope that the Federal Court would please allow a jury to decide the truth of this case!

11.) The motive was plainly engineered by a prejudiced naïve and incompetent VA Police Chief after he did not contact an employee **promptly** (*as the VA Code of Conduct requires for a supervisor to do*) in reference to an outside source on November 25, 2011 with obvious malicious intent stating false allegations against an employee's reputation provoking and producing extreme harassment by the supervisory staff against said employee.

12.) **Note:** Officer Gilliam is not made aware of the stated allegations and why all the hostility coming against him until his proposed removal on September 25, 2012 ten (10) months later. With all due respect could the Court please address this issue?

13.) The inappropriate conduct in the workplace (sex on VA property) was the catalyst for the figurative "Kick Me" Sign to be placed secretively on the Plaintiffs back; which in turn lead to the other three charges that the Plaintiff reasonably believes are based on prejudice from the supervisory staff in order to add a paper trail against the Plaintiff; and find favor with the VA Police Department.

14.) **This is an evident form of Law enforcement harassment or tort against the Plaintiff but not for the other alleged perpetrator Liz Marsh; who was alleged to be involved in the initial circumstances or law enforcement investigation of the violation 38 CFR 1.218 (b) (44) Any unlawful sexual activity.**

15.) *So this case is not a standard EEOC discrimination case; because this case involves a Veterans Affairs Police Department conducting a federal police investigation and showing favoritism for one of the alleged perpetrators.* Note: The Plaintiff is not intentionally disrespecting the Judge's Order to not further discuss crimes protected by sovereign immunity here it is just the Plaintiffs sincere and primary concern that while upon researching the antiquated sovereign immunity clause he has discovered the Federal Tort Claims Act (FTCA) U.S.C. 1346 2 However, the FTCA does not exempt intentional torts committed by "investigative or law enforcement officers, thus allowing

20

individuals aggrieved by the actions of law enforcement officers to have their day in court

(Millbrook v. United States). The Plaintiff reasonably believes he fits into this context. The

Federal Tort Claims Act **("FTCA")** is a 1946 federal statute that permits private parties to sue

the United States in a federal court for most torts committed by persons acting on behalf of

the United States. **33. Immunity of Government Officers Sued as Individuals for Official Acts.**

U.S.C. 2679(b) (1) However, the immunity conferred by **FELTRCA** does not extend or apply to

suits against federal employees for **violation of the Constitution or federal statutes**. Thus,

government officials sued for constitutional torts continue to be protected only by qualified

immunity. The Plaintiff is countering the Defendants claim of sovereign immunity and

respectfully makes the claim that FTCA and FELTRCA clearly supersedes it in this case that has

been continuously active since December 24, 2012 for the Federal Court to note.

16.) **The Plaintiff reasonably believes that his Fourth Amendment to the U.S. Constitution has**
**been violated and has been used as the foundation for the Veterans Affairs to build and plot**
**for their insidious Wrongful Termination case against him.**

17.) Mr. Marsh committed an **invasion of** privacy (breaking and entering) and **the Federal**
**Government violated Mr. Gilliam's Constitutional Fourth Amendment Rights** when the
Veterans Affairs (Detective Tim Torain and newly selected Captain Dennis Moran)
spontaneously contacted Mr. Marsh on March 4, 2012 **(Note: Mr. Marsh and Officer Gilliam**
**were friends at that time)** and coerced and cajoled Mr. Marsh to come to the Veterans Affairs
and give a sworn statement along with the tainted text messages that Mr. Marsh had
surreptitiously obtained by breaking and entering into his now ex-wife's iPhone.

18.) **This act clearly demonstrates the government taking Fruit from the Poisonous Tree and violating Mr. Edward Lee Gilliam's Constitutional Forth Amendment Rights as a Hostile act deliberately and maliciously made against him.**

## B. Plaintiff's Wrongful Termination- is based on a "but for" Disparate Treatment Claim Based on Race, National Origin, and Gender

19.)    This Disparate Treatment and therefore <u>Discrimination is in reference to a negligent police investigation-guilty of a tortious act against the Plaintiff by the Veterans Affairs Police Department</u>. The Discrimination is abundant but we are to believe from an administrative perspective that because Ms. Marsh works for a different department under a different supervisor. We are to accept the rigid understanding and that being focusing on the work station of the two <u>and not the most important factor the disciplinary context and **the nature of the offenses committed** which reasonably supersedes the other; in addition she and the Plaintiff both work for the same overall supervisor Director Klinker and this is a police investigative tort.</u>

20.)    Hypothetically**:** If two staff members one a Caucasian and the other a Black were working at the Veterans Affairs and they shared a pint of whisky in an office together and each drank a half pint and where caught doing so, and only the Black was terminated for being under the influence of alcohol and the Caucasian was given a three days suspension, **that would clearly be law enforcement discrimination**. But we are to believe because they worked at different departments within the Veteran Affairs this is not discrimination because they're not identical comparators at the work station. <u>This understanding is administrative, inflexible and two rigid and therefore absurd in reasoning.</u> The law was made for man, not man for the law. The reasonable focus should be placed on the circumstances in the violation and not what department the two work at in the overall

department that being identical the Veterans Affairs. **This is a negligent police investigation case.**

21.) The Plaintiff claims this to be the case here: "The quantity and quality of the comparator's **misconduct** must be nearly identical" to that of the plaintiff. *Brown v. Jacobs Engineering, Inc.,* 401Fed. Appx. 478,480 (11th Cir. 2010) (internal quotations and citation omitted). "**The Most important factors** in the disciplinary context are the **nature of the offenses committed** and the **nature of the punishment imposed.**" *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(quotation omitted).

22.) **Now these statements present a massive amount of common sense to the Court for its consideration for justice, and the Plaintiff with all due respect requests a response. The Plaintiff claims this to be a reasonable and rightful understanding.**

23.) So both a **male and _female_** are accused of having sex on VA property and both of them are not told about it for **ten months later** while the supervisory staff is advised (self-evident truth) to take action against them when ever they see the two of them together; and so throughout the year of 2012 three frivolous additional irregular and highly suspicious charges are piled on against the male; resulting in his removal and the female only receiving a three day suspension- **is not suspect; and in layman's terms a redress-able harm against the Plaintiff for which the VA is liable?**

24.) The Plaintiff reasonably believes there is a preponderance of implications here, and to think otherwise is intellectually dishonest. This is not legal conclusions without adequate factual support and should be construed in the light most favorable to the Plaintiff as truth. The Plaintiff makes the reasonable claim that it is facially plausible; because it is what actually happened to Officer Gilliam in the year of 2012. This is the force of logic here in reasoning and it presents the clear cause and effect of a corresponding truth and is therefore **the proof of the evidence at hand.**

25.) To think that what needs to be plausible on its face is perhaps the Plaintiff overheard the supervisory

staff state hypothetically: "Hey listen up everybody we are going to build a case against the adulterer Officer Gilliam and not MSA Liz Marsh because she is a female Hispanic mother; and we all know the heat we will get if we attempt to remove her, besides I am already being investigated for a pattern, practice and culture of retaliation. Also remember the husband who used to work at WINK News asked us to be lenient on her and if we do he will give us evidence against Officer Gilliam for removal. And if this ever goes to court we can also separate the two by adding three more additional bogus shot gun charges against Officer Gilliam. And now I know to wait at least four months after an employee contacts the EEOC against me so we can show a disconnect of reprisal when I have him removed."

26.)    This is a way of reasoning that's unbelievable and way too rigid and inflexible of a realistic expectation by the Court and makes it nearly impossible to reach, <u>but with all due respect this seems to be the Courts unrealistic goal that's being required here.</u>

27.) The fact is a Caucasian- European- Male and a Hispanic- Puerto Rican- Female were both initially accused of having sex on VA property. **<u>The Veterans Affairs Police hide these accusations from both employees for ten months.</u>** The supervisory staff is told about the accusations and instructed to take action against them. In approximately eleven months the former trouble free Caucasian- European- Male has three additional irregular and highly suspect charges added against him (three of the four charges which involve the female) and he is removed by the overall supervisor Director Klinker.

28.) Three months later The Hispanic- Puerto Rican- Female has a hearing before the Assistant Director Brown and is given a mere three days suspension; and  promoted a few months later. Both work for different departments; **<u>but have the same ultimate supervisor Director Klinker.</u>** The Plaintiff reasonably believes an overemphasis is being placed on the comparator female as not being a legitimate comparator because they have different immediate supervisors even though the primary circumstances in **<u>the initial and primary violation (which is the most important factor)  is the same, that being having sex on VA property. The Plaintiff reasonably claims there is not much of a leap here to show discrimination within a police</u>**

24

investigative tort.

29.) Basically two people are initially accused of having sex on VA property which starts a police investigation generating a Hostile Work Environment manifesting Harassment and eventually one is terminated and the other is given only three days off.

30.) **The one terminated is a European- Caucasian- Male and the other one who only receives the three days suspension is a Hispanic- Porto Rican- Female.**

31.) The Plaintiff wonders if it would be considered discrimination if it was vice-versa, the Plaintiff reasonably believes so; and notwithstanding that is why **the VA Police targeted the European- Caucasian-Male. And for what it's worth even the Hispanic-Porto Rican-Female Liz Marsh thinks it was Discrimination.**

32.) This is very important "**The Defendant states**" to the effect:  "**The quantity and quality of *the comparators misconduct must be nearly identical* to that of the plaintiff" to that of the plaintiff**. The Plaintiff respectfully submits: **Allegedly having sex together on VA Property fully meets that requirement.** The defendant continues to state: "***The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.*" Note: The comparator (Hispanic -Porto Rican- Female) received three (3) days suspension and the Plaintiff (European- Caucasian- Male) was terminated. But The Court is not to recognize the glaring discrimination here because Chief Robert Shogren has wised up (understanding he is under investigation at this time) and charged the Plaintiff with three more additional charges; that are a cover up and a stretch on reality and reason; and are now being protected by sovereign immunity.**

33.) **Note: Chief Robert Shogren and the Bay Pines Administrative Staff was being investigated for causing the effect of a Pattern, Practice and Culture of Retaliation against nine (9) employees who contacted the EEOC against them between the months of July 01, 2010 through July 07,**

**2014 which the Veterans Affairs settled the case for one million dollars (1,000,000).**

34.) **Please note this was taking place behind the scenes during the Plaintiff's case starting on November 25, 2011 through October 27, 2012.**

35.) It is reasonable to think that the suspicion and proof that arises from this very fact is a huge high caliber smoking gun! **This screams there... right there... is the proof of a Wrongful Termination based on the totality of circumstance in the Plaintiffs Case!**

36.) This is Discrimination and Harassment initiated and based on a law enforcement investigation recognizing the most important factors are **the nature of the offenses committed and the punishments imposed.** The quantity and quality of the comparator's misconduct must be the nearly identical.

37.) **So why does the Defendant and the Court change the focus to them having different jobs?** And as the Defendant states to the effect: "The quantity and quality of the comparators *misconduct* must be nearly identical to that of the plaintiff" to that of the plaintiff. The Plaintiff respectfully submits: **Allegedly having sex together on VA Property fully meets that requirement but for one is male and the other** female. The defendant continues to state: "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."

38.) **Note: The comparator received three (3) days suspension and the Plaintiff was terminated. But The Court is not to recognize the glaring discrimination here because Chief Robert Shogren has wised up and charged the Plaintiff with three more additional charges; that are a stretch on reality and reason and now can't be argued due to their protected by sovereign immunity; but never the less scream of government corruption!**

26

39.) So as stated by the Court: "In evaluating a rule 12 motion to dismiss, the Court must accept as true all factual allegations in the complaint and "construe them in the light most favorable to the plaintiff." May that be the rule here and now?

40.) In addition: **(2) Discrimination of a European-Caucasian-Male;** FACT: The initial allegations were against **"two people"** supposedly having sex on VA property; yet only Officer Gilliam (the European Caucasian Male) was **pursued by law enforcement**, with fabricated evidence and not the Hispanic-Porto Rican Female mother. Why?

41.) This is a **clear act of disparate treatment** because **both had been accused of having sex** on VA property, initiating the police investigation and tort of the same. Robert Shogren tainted this entire case by committing **DISCRIMINATION.** He suspiciously only pursued the **European White Male**, initiated by the Defamation of Character allegation (ROC) by Gina Berchtold) of **TWO people** having sex on VA property and not pursing the **Female Hispanic Porto Rican** (who was soon later promoted).

42.) The Agency fabricated three more additional charges against the Plaintiff; but can be refuted with evidence beyond probable cause and rising to beyond a reasonable doubt, **as fabricated charges at trial.**

43.) **Note:** these charges are now protected by sovereign immunity **and** therefore the Plaintiff makes the claim he should be shown favor and given the benefit of the doubt concerning these three additional bogus charges that could be refuted, "but for" sovereign immunity protection.

44.) The Agency is criminal with its sneaky and cunning ways; and is very aware of how to build a case against an employee that they seek to have removed. The Agency even takes arrogant pride in possessing this corrupt capability as evident throughout this case (See, Case Num. 8:10-cv-01482-

MSS-TBM for further examples of a Pattern, Practice and Culture of Retaliation against several

employees.) (Please see Plaintiff's- Documentation of Case Events).

## C.) Plaintiff's Wrongful Termination- is based on a "but for" Ratcheted Up Retaliation Claim for an EEOC Contact

45.) The Plaintiff has at least nine (9) comparators or fellow Police Officers who experienced the same

type treatment now known as a Pattern, Practice and Culture of Retaliation against any employee who

contacts the EEOC against Veterans Affairs Chief of Police Robert Shogren or the Bay Pines

Administration (Case: 8:10-cv-01482-MSS-TBM Atkinson et al v. Secretary, Department of Veterans

Affairs.

46.) Please notice: Date Filed: July 01, 2010 through July 07, 2014). Compare with the Plaintiff Officer

Ed Gilliam's Case dates: November 25, 2011 through October 27, 2012. Mr. Gilliam's case is couched

within the above listed ongoing case. The totality of circumstantial evidence that's here is overwhelming

and a reasonable motive to consider as being suspect in the Plaintiff's case.

47.) Individual **causes** and their **effects** can rarely be isolated. Minor actions and random incidents can

have disproportionately large-even **decisive–effects**.

48.) This Case against the Veterans Affairs officially started on November 25, 2011. Jeff Marsh

intentionally and maliciously committed defamation of character by slandering Ed Gilliam and Liz

Marsh to Gena Berchtold, who initiated a Report of Contact.

49.) VA representative Chief Shogren did not follow VA Code of Conduct where it is written that

supervisors are to **promptly** advise employees of any misconduct; but Ed Gilliam and Liz Marsh were

28

**not advised** until ten (10) months later; after other allegations were frivolously fabricated against Officer Gilliam. What Chief Shogren wrongfully did was exemplify poor judgment by promptly alerting the supervisory staff of both individuals to take career damaging action against them. So the infamous **"Kick Me Sign"** was placed on their backs; unknown to them for ten (10) long and agonizing months and **tainted this entire case**.

50.) Because of this hidden **Cause** for reprisal or retaliation, a Hostile Work Environment developed for both Ed Gilliam and Liz Marsh; but much more so for Officer Ed Gilliam revealing discrimination between the two. **This is a self-evident truth of Cause and Effect.** What is the prominent difference between the two one might ask? Well one is a *European Caucasian Male* and the other is a **Hispanic Porto Rican Female.**

51.) **On June 15, 2012 Ed Gilliam is dismayed and in fear for his career and livelihood and begins to recognize he is being set up; so he contacts the EEOC for safety after Chief Robert Shogren mysteriously refuses to meet with him.** Officer Gilliam files an Informal Counseling Case Number 2001-0516-2012103538 Attention: Kelly Schafer (**who was aware of Chief Shogren's bad conduct and stated the same, she stated that Chief Shogren was unreasonable and had just got up and walked out of a ADR in the past refusing to reason with employees).**

52.**) Note:** This contact with the EEOC is a first in the life time of Officer Ed Gilliam and it is primarily due to Officer Gilliam does not know what's going on in his work environment other than the general term reprisal or retaliation effects for some unknown reason or cause and it is resulting in a Hostile Work Environment. **Examples are**: reduction in responsibilities, hyper criticism, assignments off property, arrest credentials suspended, standby for a fit for duty psychological evaluation, told to meet outside the office for assignments, dress in plain cloths, the sabotage of an EEOC meeting, four (4) fact

findings without prior counseling and him being warned only to see his new girlfriend on her lunches and breaks which is what he was doing in the first place (Please see: Documentation of Case Events). 53.) It didn't make sense, at the time for Officer Gilliam and would not until September 25, 2012 when he received his proposed removal letter and documentary evidence to study.

54.) Please understand this is all new to Officer Gilliam because until the year 2012 he has never been in trouble before while working at the Veteran's Affairs since his starting date on July of 2003. Officer Gilliam's extra duties consisting of Primary Evidence Custodian and Training Officer were due in part to his professional demeanor and ability to work unsupervised. So in the year of 2012 what he was being accused of was totally out of character for him. Officer Gilliam had been considered a highly regarded professional Police Officer holding a degree in Criminal Justice and the graduate of three Police Academies; two federal and one by Florida Department of Law Enforcement (FDLE). Officer Ed Gilliam was highly invested in the discipline and practice of being a Professional Law Enforcement Officer.

55.) Approximately forty-five (45) days after September 12, 2012 due to the advice of Union Steward Albert Brown Officer Gilliam withdrew his informal complaint in hopes it would be considered an act of goodwill; therefore influencing Chief Shogren and Director Suanne Klinker to have mercy on him; perhaps allowing Officer Gilliam to maintain his career as a VA Police Officer. Officer Gilliam took Union Steward Albert Browns advice and withdrew his informal complaint, primarily due to fear of retaliation from the Veterans Affairs Administration. But evidently it was too little too late. (It is reasonable to believe that Union Steward Albert Brown was privy to the knowledge of Chief Shogren's ongoing investigation at the time of engineering a Pattern, Practice and Culture of Retaliation against all those Bay Pines employees who contacted the EEOC against him). Union Steward Albert Brown

stated to Officer Gilliam to focus on his Written Response to the Director and his later Verbal Response and to forget about the EEOC complaint. **It would only further antagonize the administration. The Plaintiff reasonably believes that the fear of retaliation and the threat of a twenty one (21) year career removal is enough reason for failing to meet the forty five (45) day deadline if so disputed by the Defendant.**

56.) After Officer Gilliam's removal on October 27, 2012; on December 24, 2012 Officer Ed Gilliam had Attorney Mark Esher file a formal EEO **Mixed Case Complaint** against the Veterans Affairs with no problems in doing so at that time. The Plaintiff understood by filing a **Mixed Case Complaint** it would not only allow objection to the four (4) allegations against the Plaintiff; in reference to the Veterans Affairs committing High Crimes and Misdemeanors that far exceed the four (4) allegations made against the Plaintiff-Officer Ed Gilliam; and in addition objecting to the EEOC Violations the Veteran's Affairs is obviously guilty of committing.

57.) Please take recognition that the EEOC so misunderstood this Case that the Plaintiff organized what he referred to as the E-Book for Attorney Mark Esher to submit initially to the MSPB. This E-Book has now been modified to be the **Documentation of Case Events** and has already been submitted to The Federal Court for evidence and review for trial.

58.) At the Alternative Dispute Resolution (ADR) meeting on September 14, 2012 Chief Shogren led Officer Gilliam to believe that the Retaliation and Hostile Work Environment was because of newly selected Lieutenant Pete Quimby, and further stated he did not hold grudges and in the past. He had suspended officers for two weeks and then promoted them the next year and he wanted me to know that (this is why Officer Gilliam and Albert Brown where shocked on September 25, 2012 when Chief Shogren handed Officer Gilliam a proposed removal letter dated September 19, 2012.)

31

59.) The question arises why did Chief Shogren play down the disciplinary action to be taken at the ADR? **Note: It only took Chief Shogren five (5) days to come up with these charges after the EEOC-ADR.**

60.) The Plaintiff reasonably believes the real causation for removal can be observed here. Latter on Chief Shogren in *pretense* as a cover up even asked Officer Gilliam why he thought Pete Quimby was coming against him for added subterfuge.

61.**) All the while Chief Shogren was being investigated for a Pattern, Practice and Culture of Retaliation against fellow employees reporting him to the EEOC.** Chief Shogren was rebuked by one of the EEOC representatives due to him becoming so adamant stating this case was not about EEOC violations which he stood up and counted off the different EEOC Categories using his fingers as he did.

62.) **Union Steward Albert Brown was at all the Plaintiffs meetings as a witness to this incident and others for legitimacy and confirmation.** The Plaintiff is aware that Mr. Brown could be questioned on the verity and veracity of all the Plaintiffs statements that he boldly declares to be true, which should confirm the truthfulness of the Plaintiffs testimony. **This fact alone adds significant credibility to the Plaintiff's testimony at all times!**

63.) Now the Defendant is trying to argue that the **effect** of the removal can be considered but not the extenuating circumstances or **cause of the effects** which with all due respect is absurd in reasoning, especially in this case were the **cause for the effects** *was hidden from Officer Gilliam* for ten (10) months; and he fully didn't understand the **causes for the effects** until October 12, 2012 when he met with Bay Pines Director Ms. Klinker, after restudying the documentary evidence against him that was given to him at his removal; **right before he was escorted off VA Property in humiliation.**

64.) Whether The Court is considering this case as an EEOC Violation, MSPB Violation, Tort Violation or a High Crimes and Misdemeanor Violation; **the one thing that stands out and is crystal clear is *the***

*effects in this case*; and *the Cause of those Effects* **resulting in a Wrongful Termination-that
extrapolates all the way back to November 25, 2011, and *a covert and negligent* Veterans Affairs
police investigation of two people**.

65.) At that time Chief Shogren decided to put a **"Kick Me Sign"** on Officer Ed Gilliam's back leading to
the **decisive effect** of a **Wrongful Termination** of a twenty-one (21) year; Navy Veteran, with an
achieved Associate Degree in Criminal Justice and a Multi-Disciplinary Bachelor Degree: in addition a
Three Time Police Academy Graduate-Career Established Veterans Affairs Police Officer, known as
Officer Edward Lee Gilliam.  All due to the **Cause and Effect** of the notorious and naïve' Veterans
Affairs Chief Robert Shogren and Bay Pines Administration displaying poor judgment by maliciously and
habitually engineering a Pattern, Practice and Culture of Retaliation; and committing High Crimes and
Misdemeanors (now protected by Sovereign Immunity).

66.**) The end result is the Veterans Affairs made Accusations, based on Speculations but no real
Confirmations; all the while committing serious Violations against the Plaintiff Officer Edward Lee
Gilliam; wrongfully ending his career as a documented Outstanding Police Officer.**

67.) Peter Zeah the VA Human Resources head supervisor was in collaboration with Chief Shogren
which the Plaintiff believes is standard procedure. This fact was confirmed to the Plaintiff at the ADR by
Chief Shogren.

68.) Now let us think about this. **Chief Shogren was being investigated at this very time for creating a
Pattern, Practice and Culture of Retaliation against not just one but several employees who had
contacted the EEOC in Bay Pines; and even though the case did not go to trial and set precedents the
VA paid out a million dollar settlement.**

69.) This is evidence that hold a reasonable corroboration of guilt and the same thing is happening in

the Plaintiff's case, and this should speak volumes to a reasonable person. So the Plaintiff does not think it's a stretch to acknowledge Mr. Zeah would be very knowledgeable to the point of being an expert witness on the rules and regulations of the EEOC at that time.

70.) In other words Mr. Zeah would have known better than most to wait more than four months to terminate the Plaintiff after his initial contact with the EEOC on June 15, 2012 for this very reason here and now. The average employee would have no idea he was being set up for failure at a later date.

71.) And in reference to before the Plaintiff contacted the EEOC. The cause to the effect is gradual, so what? It has been stated over and over the Plaintiff had no idea of what was going on, *because he was not given required counsel* so he went along hoping things would get better. *Time does not disconnect the cause from the effect!* For people who hold grudges the cause and effect may take years for the full retaliation to take place.

72.) Director Klinker's actual statement reveals she too had previous knowledge of the Plaintiff's initial contact with the EEOC as follows: **"While I started at Bay Pines the previous month, I may have received verbal updates in June and beyond from the EEO Program Manager, but do not recall."** 73.**) So it has been factually confirmed that Director Klinker did know about the Plaintiff's EEOC contact the very month the Plaintiff contacted the EEOC and there is good chance it was by Human Resources Chief Peter Zeah and Joan Harris.**

**Note: The Plaintiff has always maintained the Retaliation against him was Ratcheted Up *after* he contacted the EEOC; finally ending in his removal.** The Plaintiff is making a factual statement that all three individuals at the VA involved in his wrongful termination had knowledge of his contact with EEOC on June 15, 2012 or shortly thereafter. They are: Director Klinker, Human Resources Chief Peter Zeah, and Chief Robert Shogren and they all waited to terminate the Plaintiff effectively October 27,

2012. Why would that be? Well now we know. Considering the totality of circumstances and the

correlation and corroboration going on in this case; the Plaintiff reasonably believes this was

intentional; in order to disconnect the termination with the EEOC contact.

**74.) Note:** the purposed removal letter was not formulated till after the ADR according to Chief

Shogren when he stated to Officer Gilliam at the end of the ADR on September 14, 2012 that he

wanted me to know he did not hold a grudge and that in the past he had placed officers on suspension

for two weeks and then promoted them the very next year. **That's why Officer Gilliam and Union**

**Representative Albert Brown were in shock September 25, 2012 when Officer Gilliam was asked to**

**sign his purposed removal letter and then escorted off VA property in humiliation.**

75.) But this reveals Director Klinker was not merely "proceeding along lines previously contemplated"

and was very aware of the Plaintiffs case involving adultery and sex on property allegations, the

profanity he had used and his EEOC contact. This would be a correlation and corroboration with her

near future Non-Adherence removal decision on two pieces of paper.

76.) **Note: Ms. Klinker expresses personal passion against Mr. Gilliam's adultery, profanity and**

**alleged lack of candor but sustains the four (4) charges on a mere two pieces of paper with little or**

**no explanation?  Director Klinker's true motive for removal of Officer Edward Lee Gilliam is crystal**

**clear!**

77.) The adverse action taken in this case is a demonstration of the causation. Example: Instead of the

VA Police directly stating they would pursue the European Caucasian Male and not the Hispanic Porto

Rican Female the Veterans Affairs actual actions speak louder than their unspoken words as being the

objective; making the discrimination true based on a pattern of indirect but discriminating behavior.

And that development and pattern of evidence would be direct evidence for discrimination and

therefore corroboration of the same.

## D.) Plaintiff's Wrongful Termination- is based on a "but for" Discrimination and Harassment Claim Based on Non Adherence to Religion

78.) It is a fact Director Klinker committed an EEOC Non-Adherence to her Religious Beliefs

Violation (adultery) when she distinctly and emphatically pointed out at the Verbal Response Hearing

of Mr. Gilliam in reference to stating to him directly and in a matter of fact tone he was being

inconsistent by referring to Jeff Marsh in his Written Response as the estranged ex-husband when in

actuality at the time he stated the allegations to staff member Gina Berchtold he was her **HUSBAND!**

79.)  Plaintiff is reasonably **claiming a non-adherence claim** here and it is not necessarily because he

is a Protestant but because he is a non-Catholic (religious) as Director Klinker's religion happens to

be. The Plaintiff reasonably believes Director Klinker has considered the Plaintiff as a Protestant or

more so a heathen by committing the sin of adultery (It is common knowledge the animosity between

Catholics and Protestants or Heathens).

80). Note: The Plaintiff is not stating the Director knew he was a Protestant but simply behaved

himself like a heathen according to her Catholic faith and it was evident to her because the Plaintiff

had committed adultery; which was not even an issue in this case.

81.) **The Director was supposed to be unbiased in considering whether or not the Plaintiff had**

**sex on VA property and not judging the moral (religious) nature of the behavior. She should**

**have been wondering why the Plaintiff had not received any Counseling on any of the charges,**

**as required.**

82.) Also the Plaintiffs Attorney Mark Esher marveled at how the Director sustained all four charges on a mere two pieces of paper. Attorney Esher stated to the Plaintiff that was very unusual in removing a twenty-one year federal employee with really no explanation on two pieces of paper. In addition the Plaintiff's Union Representative Albert Brown has written a sworn statement on February 02, 2017 that reads:

83.) "To my recollection Lt. Quimby told Edward Gilliam to stay away from Liz Marsh except at breaks and lunch. I as his union representative told Officer Ed that Quimby was within his supervisory rights to make such and order, and that I thought that is was a good idea to stay away because of the heat not doing so could bring.

I gave Officer Ed my thoughts about what the feelings of our fellow co-workers including Ms. Klinker might have in regards to his relationship with Ms. Marsh. Because the word was out that he cheated on his wife with another man's wife and that there was a small child involved people would not view this situation in a favorable light. On the drive up to Ms. Klinker office for Officers Ed's oral presentation I suggested that he not bring up Jeff Marsh, Ms. Marsh's husband as being the bad guy because after all it was this man's marriage and family on the line and that people would not see Mr. Marsh as the bad guy in all of this.

I don't remember the exact dates of these conversations.

Albert G. Brown."

84.) **So the disparate treatment claim is between Director Klinker and the Plaintiff's adultery vs the intangible understood employee that had not committed adultery or psychologically Director Klinker herself.** Attorney Mark Esher, Union Steward Albert Brown and Officer Ed

37

Gilliam all three believe Director Klinker's treatment and final decision was based on a "non-adherence" religious discrimination claim. And as it has been written in the Bible "a threefold cord is not quickly broken."

85.) There is an additional correlation here in reference to the charge Conduct Unbecoming a Police Officer. **Director Klinker stated she had a problem with the profanity that Mr. Gilliam was reported of using.** And Mr. Gilliam responded to her to the effect at his Verbal Response hearing; with all due respect the profanity Mr. Gilliam used was between two consenting adults who thought they were in private so if they chose to use profanity they would have every right to especially when they thought they were in a private area. **This is another correlation supporting the Non-Adherence to her religious beliefs violation.**

86.) Because Officer Ed Gilliam was defending himself against unjust charges (lies) Director Klinker questioned his potential for rehabilitation, simply for defending the truth, she completely and ineptly ignored the fact it is not a lack of candor to refute and deny lies that attack your character and reputation. **But this is another correlation of Non-Adherence to Ms. Klinker's religious belief system.**

87). The Plaintiff reasonably believes that Sergeant Walter Slam (Brad) revealed his motive by making a Non-Adherence to his Religious Beliefs statement because later he commits fraud-lying about a training technique as being malicious (but can't be argued due to sovereign immunity), causing the Plaintiff to endure the humility of not being able to enter the office area, and latter lied and hid Officer Gilliam's government issued vehicle keys causing him to

38

miss an EEOC meeting with at the time supervisor Joan Harris (who is well aware of this incident) at Bay Pines; and finally the removal of Officer Gilliam.

88.) These multiply incidents against the Plaintiff are definitely a serious and material change in terms, condition or privileges of employment that epitomizes several "adverse employment actions" made against the Plaintiff. Any one of these harassing behaviors confirms "adverse employment action."

89.) The corroboration: The Plaintiff writes a written response to the Director and refers to the husband of Ms. Marsh in the present tense as the estranged ex-husband and Director Klinker the overall supervisor of the VA at Bay Pines later at the Verbal Response stops the meeting and interjects Officer Gilliam with a piercing glare and then raises her voice with an emphatic seething tone and states to the effect: **Jeff Marsh wasn't Ms. Marsh's estranged husband at the time like written here HE WAS HER HUSBAND!** And then later sustains all four charges against the Plaintiff with very limited explanation on two pieces of paper. The Plaintiff reasonably believes this would be suspect to a reasonable person.  This is another correlation and therefore corroboration for the guilt of a Non-Adherence to Religious Beliefs Violation.

**90.) Yes, the Plaintiff reasonably believes the statement has not only an implication but a very strong implication with a primary inference. The meaning of the implication considering the English language would be that of accusing the Plaintiff of adultery; for that is the way Officer Gilliam understood it at the time, as did Union Representative Albert Brown and later Attorney Mark Esher.**

91.) The Plaintiff reasonably believes that if this is not a poor double entendre' intended to convey the implication of the Directors prejudice against adultery (Non-Adherence); then what is the alternative view; **the Director is a fanatical enthusiast about "accuracy in writing past and present tense", which the Plaintiff believes would be absurd to that of a reasonable person and rather ludicrous.**

92.) The Hostile Work Environment was because Chief Robert Shogren concealed a false allegation (sex on VA property) made against the Plaintiff for ten months and alerted the supervisory staff to come against him, resulting in a figurative **"Kick Me Sign"** being placed on the Plaintiffs back for ten months "but for" this provocation the Plaintiff reasonably feels he would not have been so severely Harassed. This covert negligent and prejudiced police investigation only targeted the **European- Caucasian- Male** and the alleged sex partner in the case a **Hispanic- Porto Rican- Female** was left alone.

93.) The **European-Caucasian-Male** had to endure four belittling fact findings, suspension of arrest powers, made to work in plain clothing, blocked from entering the police office, made to receive daily assignments standing within the public eye, work assignments off property, threatened with a very stressful fit for duty psychological evaluation which never took place until initiated upon by Mr. Gilliam at an annual psychological evaluation, thwarted from contacting the EEOC, wrongfully accused of meeting with girlfriend outside breaks and lunches, was told by Detective Tim Torain he would never wear a police badge again, Supervisor Walter Slam stated the Plaintiff was divorced and living in sin with staff member Liz Marsh and he did not want to have any more Theologically  discussions, Note: **Sergeant Slam would later commit**

40

**fraud against Officer Gilliam and thwart him from meeting with the EEOC along with Lt. Pete**
**Quimby, escorted off property in shame.**

94.) **The Plaintiff is reasonably stating the Hostile Work Environment was not only based on**
**Non-Religious Harassment but a Law Enforcement Investigative Tort expressing harassment**
**due to race, color, sex, and national origin.**

**95.) This case clearly reveals *reverse discrimination* between a European Caucasian Male and**
**a Hispanic Porto Rican Female.** The Plaintiff reasonably believes if he had not contacted an
attorney the Hispanic Porto Rican Female would not have even received three days suspension.

96.) By acknowledging the fact the Veterans Affairs Administration accusing Mr. Edward Lee
Gilliam of lying or not being candid by casting and fabricating lies against him and then
expecting him to admit to the lies, is one of the most despicable assaults that one human being
can make of another, and wouldn't that be an extreme injustice to allow those who are guilty of
it to get away with it? Well that's exactly what happened in this case because Officer Ed Gilliam
was defending himself against unjust charges (lies) when Director Klinker questioned his
potential for rehabilitation, simply for defending the truth, completely and ineptly ignoring the
fact it is not a lack of candor to refute and deny lies that attack your character or reputation.


**Note:** The Plaintiff will now counter the four charges alleged against him in brevity resembling
that of a police affidavit with a narrative expressing probable cause. He will express how
frivolous the charges are even to the point of them being lies, deception and criminal at times,
though he is well aware this is a civil suit. The point here is to show the true motive for his

41

termination is actually a pattern, practice and culture of retaliation for contacting the EEOC on

June 15, 2012 and these charges are a ratcheted up expression of hostility, harassment ending in

a wrongful termination. Note: On May 1, 2012 Fact Finding Detective Tim Torain advised

Officer Gilliam that there was a good chance none of this would even make it up to the Chief at

Bay Pines. He was referring to the April 19, 2012 Fact Finding so this is what inspired the

Plaintiff because he wanted the Chief to know, to request to speak with Chief Robert Shogren,

which was denied. The Plaintiff was in shock that the Chief would not meet with him so

eventually the only way the Plaintiff could meet with the Chief was to file an informal EEOC

complaint and that's what he did on June 15, 2012. By doing this Officer Gilliam unknowingly

angered Chief Shogren due to the fact he was already under investigation for creating a Pattern,

Practice and Culture of any employee who reported him to the EEOC (Note: Officer Gilliam was

not aware of this sub textual investigation at the time). **But with the Plaintiff's case there

would not only be harassment but with a new Director on board Ms. Klinker there would

be a termination a wrongful termination but a termination none the less.** This reference and

analysis is to show to the Federal Court and Jury the infuriating hostility **the Veterans Affairs

Administration took in targeting Officer Gilliam for termination!**


**Here now the Plaintiff will easily counter and refute the four (4) charges in the actual

chronological order that was alleged against him; leaving the reader or jury asking why Officer

Gilliam was terminated in the first place by these frivolous charges that are a cover-up and

piling on manifesting a Hostile Work Environment and  manipulating towards a Wrongful

Termination:**

## 45.) Inappropriate Conduct in the Work Place- Violation of the Plaintiff's Constitutional 4th Amendment Right.

1.) It is a fact in reference to this charge Detective Tim Torain and newly selected Captain Dennis Moran wrongfully reached outside the Veterans Affairs Police Jurisdiction and contacted the estranged ex-husband Jeff Marsh on May 4, 2012 and coerced him to surrender to the Federal Government illegally obtained text messages (Breaking and Entering an iPhone Device) and therefore the Federal Government took of the fruits of the poisonous tree and maliciously used it as a foundation against Officer Gilliam in his removal by crafting an investigation to meet a predetermined outcome.

2.) It is a fact Director Klinker did not hear any audible or view any video of Officer Gilliam and Staff Member Liz Marsh having sex on VA property; so Ms. Klinker evidently guessed that they had sex on VA property due to the false interpretation of illegally obtained private text messages or Non-Adherence to her Religious Beliefs which she was most passionate about.

3.) It is a fact there is nothing inappropriate about two consenting adults text messaging or even sexting on **their private iPhones.**

4.) Newly selected Captain Dennis Moran wrote to the effect in his report: The couple was guilty because according to Mr. Moran who admitted he did not know that much about texting (2012) had interviewed Ms. Marsh and she had stated she thought Jeff was breaking into her iPhone to get evidence against her to claim she was an unfit mother; so for her to take the risk and allow for a salacious dialog in texting to take place with Officer Gilliam they more than likely had sex on VA property. **The major problem with Captain Moran's theory is that you can delete any**

**unwanted text messages so this understanding totally refutes his fallacious allegation.**

## 46.) Failure to Follow Instructions of a Supervisor-Perjury

1.) It is a fact in reference to this charge that there is a neutral witness testimony by Union Steward Albert Brown that Lieutenant Pete Quimby's sworn testimony at the MSPB stating that he gave Mr. Gilliam a direct order to have no interaction with staff member Liz Marsh while on duty was never stated and therefore Lieutenant Pete Quimby's testimony is one of perjury.

2.) It is a fact there is further evidence that Lieutenant Pete Quimby perjured himself because he never gave a direct order to Officer Gilliam to not have any interaction with MSA Liz Marsh while on duty on April 19, 2012 as he has stated and that very fact is reaffirmed at a later unannounced fact-finding when Captain Dennis Moran questioned Officer Gilliam note in the presence of Union Steward Brown; why he was meeting with MSA  Liz Marsh except for on her scheduled lunch and breaks as instructed reinforcing the fact that Pete Quimby lied about ever stating a direct order to Officer Gilliam not to have any interaction with MSA Liz Marsh while on duty.

3.) It is a fact that in March 14, 2012 Lt. Quimby sent an email confirmation to Officer Gilliam in reference to he was to only meet with MSA Liz Marsh at lunch and on her breaks. This would be considered a minor order. But on April 19, 2012 when he has stated he gave a direct order of no interaction with MSA Liz Marsh while on duty would be considered a major order. But suspiciously there is no email confirmation for what would be considered a major order. Because Pete Quimby is lying and has committed perjury against Officer Gilliam to get him removed from employment. And the proof of the evidence against him here is prima facie' in reasoning. But the hostility and harassment flagrantly expressed against Officer Gilliam is outrageous.

44

## 47.) Conduct Unbecoming a Police Officer- Exaggeration of an assumed Private conversation

1.) It is a fact that in reference to this charge Mr. Gilliam only spoke to Liz Marsh on April 26, 2012 in what he thought was **a private area** and had every right to talk the way he did; understanding the VA was closed and Ms. Marsh was off work (and there was no order for him not to meet with her). Now when Mr. Gilliam's voice started to rise and he was heard by only one other individual Officer Ron Testa who stepped out of the police office just across the way (10'feet) and gave a hand gesture for Officer Gilliam to lower his voice which Mr. Gilliam acknowledged and lowered his voice instantaneously **expressing total self- control**.

**2.)** It is a fact in reference to this charge Director Klinker stated she had a problem with the profanity that Mr. Gilliam was reported using. And Mr. Gilliam responded to her at the Verbal Response Hearing; with all due respect the profanity Mr. Gilliam used was between two consenting adults who thought they were in **private** so if they chose to use profanity they would have every right to; especially when they thought they were in a private area.

**3.)** It is a fact that Director Klinker having a problem with someone's language they freely use in private is once again reflective of her outrage; and an EEOC Non-Adherents to her Roman Catholic or Religious beliefs violation.

**4.)** It is a fact that **Officer Ron Testa never investigated this matter** and never reported it until seven (7) days later who has now stated he will give a sworn statement that Chief Robert Shogren and Lieutenant Pete Quimby targeted Mr. Gilliam for removal.


## 48.) Endangering the Safety of a Supervisor-is absurd in reasoning and is evidence of a Non-Adherence to a Religious Beliefs Retaliation.

45

1.) It is a fact in reference to this charge that applying a rear chokehold is considered Deadly Force and anybody who applied one with malice would be either neutralized (shot), or arrested immediately or shortly thereafter and then taken to jail and possibly prison as a very dangerous criminal.

2.) It is a fact that suspiciously no action what so ever was taken against Officer Ed Gilliam immediately or long-term; because the rear chokehold was applied in a slow to form training type manner without any malice and Sergeant Brad Slam and the other involved conspirators are discredited and obviously lying. The Veterans Affairs Police Departments lack of response corroborates this very fact; no matter their late and contrary testimony to the otherwise.

## 49.) VA Attorney Mulcahy Committed: Obstruction of Justice, Aiding and Abetting and was an Accessory After the Fact.

1.) It is a fact that the Hispanic Veterans Affairs Attorney Karen Malcahy while at the MSPB committed Obstruction of Justice by Aiding and Abetting specifically witnesses Detective Tim Torain and Lieutenant Pete Quimby by presenting them a copy of Mr. Gilliam's Witness Questions that was mandatorily submitted by Officer Gilliam to the MSPB even after the fact he distinctly requested her not to in an email address.

2.) The reason being Mr. Gilliam was planning on asking Lieutenant Pete Quimby while under oath: "What was the response of Officer Edward Gilliam and Union Steward Albert Brown when he allegedly gave a Direct Order to Officer Gilliam to not have any interaction with MSA Liz Marsh while on duty?" Next the Plaintiff Mr. Gilliam had planned on asking Detective Tim Torain the same question. He intended to reiterate to both of them that they were both under oath and that both individuals were going to be asked the same question for parallel purposes in

46

correspondence with the truth. **There would have been no corroboration because the Direct Order was never given.** But the pressure for both individuals would have been unbearable because they both know the Direct Order was never stated and the both would not have known how to respond in order to match each other's fictitious testimony therefore revealing they were both conspiring a lie that caused a wrongful termination by committing perjury against Officer Gilliam. **Veterans Affairs Attorney Karen Malcahy maliciously thwarted this exposure from happening and obstructed the exoneration of Officer Edward Lee Gilliam.**

**In conclusion**: The Plaintiff understands the pressure upon the Court and realizes it would be much easier to follow the path of least resistance and decide in favor of the Defendant the US Attorney in representing the Veterans Affairs Department. But the Plaintiff would respectfully ask the Court to remember the words of Alexander Hamilton-**"The first duty of society is justice"** the words inscribed upon the Court itself and create a new and insightful precedence that illuminates the shop worn precedence of yesteryear and kindly allow a jury to decide the truth of the most significant case. Thank you, Senior United States District Judge John E. Steele for your deliberation and the opportunity to submit this Third Amended Complaint. Know that my sincere prayer is it rises to your high standards of excellence!

Respectfully submitted,

_____

August 24, 2018

47

**DOCKET #73**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

EDWARD LEE GILLIAM,

    Plaintiff,

vs.                              Case No: 2:16-CV-255-FTM-99CM

U.S. DEPARTMENT OF VETERANS AFFAIRS,

    Defendant,

## PLAINTIFFS REBUTTAL TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

## PLAINTIFF'S RESPECTFUL DEMAND FOR A JURY TRIAL

### GENERAL ALLEGATIONS
### A. Pattern, Practice and Culture of Retaliation

1. The Defendant has engaged in a pattern and practice of retaliation and hostile retaliatory work environment and has maintained a culture of retaliation and hostile retaliatory work environment and has allowed a culture of retaliation and has allowed a culture of retaliation and hostile retaliatory environment to be maintained at Bay Pines and Fort Myers Outpatient Clinic with respect to Equal Employment Opportunity (EEOC) activity, including making EEOC complaints, participating as a

50

witness on behalf of other parties' EEOC complaints and objecting to or opposing discriminatory and retaliatory conduct.

2. For many years various high-ranking administrators, managers and supervisors at Bay Pines and Fort Myers Outpatient Clinic have punished employees or permitted or overlooked the hostile treatment of employees who made EEOC complaints or who objected to or opposed discrimination or retaliation. Such administrators have attempted to deter employees who have made EEOC complaints or have opposed discrimination or retaliation. For example, Van Buskirk, the Chief of Staff, and Lin, the Chief of the Medicine Service, with the knowledge, assistance and support of Hopkins, decided to and attempted to deter the filing of employment complaints by retaliation against those who engaged in EEOC activity (Specifically 2010 through 2014). To this end Lin and Van Buskirk, with the actual or tacit support of Hopkins, undertook a course of retaliation against numerous Bay Pines employees for engaging in EEO and other protected activity, including inter alia, Dr. Diane Gowski, Dr. Claudia Cote, Sally Zachariah, Dr. Ramon Lopez, Dr. Jacques Durr, Dr. Robert Mandelkorn (Fort Myers Ophthalmologist) Ms. Sabrina Patrick, Ms. Roxanne Lainhart Bronner, Dr. Selim Elzayat, Dr. Valpersia Gainers-Hasugluw, Ms. Pamela Trimle, Dr. Michel Vandermael, Dr. David Johnson and Officer Edward Lee Gilliam (Fort Myers VA Police Officer).

3. Such retaliation included, by way of example, various types of discipline and proposed discipline, including termination, suspension, reprimand and counseling; denying leadership positions; changing duties and office assignments; **seeking**

51

**information to discipline and terminate employees; seeking out employees to assist in gathering derogatory information about employees, including the solicitation of reports of contact, which are written complaints by one employee against another and are used as a basis for steps in discipline; spying on employees; using unjust criticism and criteria and withholding awards until an employee agrees to provide information derogatory of other employees; rifling through employees' files and documents; creating and maintaining false records about employees; removing employees from committees; reducing or limiting physician's medical privileges and credentialing; subjecting employees to inappropriate fitness-for-duty exams; failing to follow required procedural requirements for adverse or disciplinary actions; subjecting employees to lower evaluations, inappropriate bonuses and increasingly higher levels of discipline up to suspension without pay and termination; *and using committees to insulate the administrators from appearing to have engaged in discriminatory or retaliatory conduct.***

4. As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, various administrators, managers and supervisors at Bay Pines and Fort Myers developed and maintained a reputation for retaliation against those who engage in EEOC activity or do no join in their efforts to insulate their management style including their willingness to retaliate.

5. As a result of the pattern, practice and culture of retaliation and hostile retaliatory work environment, a fear of retaliation has developed at Bay Pines and Fort Myers. As a result, a number of very good employees are afraid to come forward with

information they have concerning discriminatory or retaliatory conduct and a number of very good employees have chosen to leave.

6. As part of the pattern, practice and culture of retaliation and **hostile retaliatory work environment, concerns about retaliation are ignored and not investigated** (For further examples see Case 8:10-cv-01482-MSS-TBM Document 31, Paragraph 12:A etc.).

7. Klinker, Brown, Shogren, Barela, Torain, Moran, Quimby, Slam and Convery have engaged in this continuous pattern and practice of retaliation and have maintained a culture of retaliation and retaliatory hostile work environment at the Police Service (Please see Documentation of Case Events coupled with the Plaintiffs Third Amended Complaint).

8. At the relevant times Klinker, Brown, Shogren, Barela, Torain, Moran, Quimby, Slam and Convery were aware of relevant EEOC activity by the Plaintiff or Policer Officer Edward Lee Gilliam when they took adverse actions against Officer Ed Gilliam described here and in the Documentation of Case Events and the Plaintiff's Third Amended Complaint.

## COUNT 1
## Retaliation-Plaintiff Edward Lee Gilliam

9. The Plaintiff Edward Lee Gilliam sues David Shulkin as the Secretary of Veterans Affairs, for ongoing retaliation under Title VII.

10. The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events and his Third Amended Complaint 1 through 105.

53

11. The Plaintiff engaged in EEOC activity which is protected under Title VII.

12. The Defendant was aware of each of the Plaintiff's protected or EEOC activity under
    Title VII.

13. The aforesaid adverse employment actions; other adverse actions; misconduct; and
    other conduct, acts and omissions which were to the Plaintiff's detriment; as well as
    other adverse employment actions and conduct, were taken or failed to be taken by
    administrators and managing and supervisory personnel at Bay Pines and Fort Myers
    in retaliation for the protected or EEOC activity of the Plaintiff including that set forth
    above, Documentation of Case Events and the Third Amended Complaint.

14. As a direct and proximate result of engaging in protected or EEOC activity, the
    Plaintiff has suffered adverse employment actions and other adverse action, conduct,
    acts and omissions, including those found in the Documentation of Case Events and
    the Third Amended Complaint.

15. Bay Pines and Fort Myers has intentionally maintained retaliatory and unlawful
    practices, to the detriment of employee Edward Lee Gilliam.

16. Shogren at all-time knew or should have known of the retaliatory actions and
    omission being taken against the Plaintiff.

17. Shogren failed to take necessary action to prevent or correct the retaliatory actions
    and omissions being taken and, in fact, ratified such conduct (Kick Me Sign).

18. The Defendant, through the supervisors, managers and administrators of the Plaintiff
    including Klinker, Brown, Shogren, Barela, Torain, Quimby, Moran and Slam and

54

others engaged in, directed, and or ratified retaliatory conduct and frustrated the
Plaintiffs' efforts to obtain relief under Title VII.

19. The Defendant, through acceptance of such conduct, has fostered an attitude among
administrators, managers and supervisors in Bay Pines and Fort Myers that retaliation
against employees in order to discourage protected EEOC activity is acceptable
employment practice by administrators, managers and supervisors at Bay Pines.

20. Because of the willful action of the Defendant and its administrators, managers and
supervisors, and as a proximate cause thereof, the Plaintiff has been and continues to
be denied his rights to equal employment opportunity in violation of the Civil Rights
Act of 1964, as amended, 42 U.S.C. & 200 et seq.

21. As a result of the foregoing, the Plaintiff has been damaged. Such damages include,
but are not limited to discipline or proposed discipline including removal, suspension,
demotion, reprimand, and counseling; constructive discharge; loss of pay; loss of
benefits; loss of training; loss of supervisory positions; payment of attorneys' fees
and legal costs; loss of an amicable work environment; loss of career and professional
opportunities; loss of employment; harm to professional reputation; and humiliation,
anxiety, degradation, embarrassment, physical injury or illness, and severe emotional
suffering. **The Plaintiff will continue in the future to suffer the same damages**
**absent relief from the Court.**

22. The Plaintiff has satisfied all conditions precedent to the filing of this suit or has been
prevented by the Defendant from satisfying such conditions or is excused under the
law from satisfying any other conditions. WHEREFORE, the Plaintiff requests

prospective relief, including, *inter alia,* reinstatement; judgment for damages;

attorneys' fees and costs; and such other and further relief as this Court deems just

and proper and for a trial by jury on all issues triable.

## COUNT II

### Race-Discrimination

23. The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events

    and his Third Amended Complaint 1 through 105.

24. As a direct and proximate result of the foregoing conduct, the Plaintiff Gilliam has

    been denied equal employment opportunity for wages, promotion, and other terms

    and conditions of employment by the Defendant because of Police Investigational

    race discrimination (Caucasian).

25. The discriminatory actions were taken by the supervisory personnel within the VA in

    order to deprive Gilliam of employment and benefits of employment because of his

    race.

26. The Defendant has intentionally maintained these discriminatory and unlawful

    practices to the detriment of its employee.

27. The Third Amended Complaint referenced actions have created an intolerable hostile

    work environment.

28. The Defendant at all relevant times knew, or should have known, of the referenced

    discrimination against the Plaintiff.

56

29. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact ratified such conduct (The pursuit of Gilliam and not Marsh).

30. The Defendant, through the Plaintiff's managers, supervisors and administrators, has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

31. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among managers, supervisors and administrators at Bay Pines and Fort Myers that racial, gender and failure to follow religious adherence discrimination is an acceptable employment practice.

32. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Gilliam has been and continues to be denied his rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. & 2000e *et seq.*

33. As a result of the foregoing, Gilliam has been damaged.  Those damages include, but are not limited to discipline, lost pay, loss of benefits, loss of training, loss of an amicable working environment, loss of career and professional opportunities, payment of attorneys' fees and legal costs, harm to professional reputation, humiliation, anxiety degradation, embarrassment, physical injury and severe emotional suffering. **Gilliam will continue in the future to suffer these damages absent relief from the Court.**

34. The Plaintiff has satisfied all conditions precedent to filing this suit or he has been
    prevented by the Defendant from satisfying such conditions precedent or he is
    excused under the law from satisfying any other conditions. WHEREFORE, Plaintiff
    requests prospective relief, judgment for damages, attorneys' fees and costs, and
    such other relief as this Court deems just and proper and for a trial by jury on all
    issues so triable.

## COUNT III

### (Gender Discrimination-Gilliam)

35. The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events
    and his Third Amended Complaint 1 through 105.

36. As a direct and proximate result of the foregoing conduct, the Plaintiff Gilliam has
    been denied equal employment opportunity for wages, promotion, and other terms
    and conditions of employment by the Defendant because of Police Investigational
    gender discrimination (male).

37. The discriminatory actions were taken by the supervisory personnel within the VA in
    order to deprive Gilliam of employment and benefits of employment because of his
    gender.

38. The Defendant has intentionally maintained these discriminatory and unlawful
    practices to the detriment of its employee.

39. The Third Amended Complaint referenced actions have created an intolerable hostile
    work environment.

58

40. The Defendant at all relevant times knew, or should have known, of the referenced discrimination against the Plaintiff.

41. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact ratified such conduct.

42. The Defendant, through the Plaintiff's managers, supervisors and administrators, has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

43. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among managers, supervisors and administrators at Bay Pines and Fort Myers that racial, gender and failure to follow religious adherence discrimination is an acceptable employment practice.

44. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Gilliam has been and continues to be denied his rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. & 2000e *et seq.*

45. As a result of the foregoing, Gilliam has been damaged. Those damages include, but are not limited to discipline, lost pay, loss of benefits, loss of training, loss of an amicable working environment, loss of career and professional opportunities, payment of attorneys' fees and legal costs, harm to professional reputation, humiliation, anxiety degradation, embarrassment, physical injury and severe emotional suffering. **Gilliam will continue in the future to suffer these damages absent relief from the Court.**

46. The Plaintiff has satisfied all conditions precedent to filing this suit or he has been prevented by the Defendant from satisfying such conditions precedent or he is excused under the law from satisfying any other conditions. WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT IV

### (Retaliatory Hostile Work Environment-Gilliam)

47. The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events and his Third Amended Complaint 1 through 105.

48. The aforesaid action, conduct and omissions have created an intolerable hostile work environment.

49. As a result of the foregoing, the Plaintiff has been damaged. Such damages include, but are not limited to constructive discharge, payment of attorney's fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering. The Plaintiff will continue in the future to suffer the same damages absent relief from the Court.

50. The Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions. WHEREFORE, the Plaintiffs request prospective relief, judgment of damages, attorneys' fees and costs and such other

60

and further relief as this Court deems just and proper and for a trial by jury on all issues triable.

## COUNT V

### Injunctive Relief

51. The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events and his Third Amended Complaint 1 through 105.

52. Unless the practices are enjoined, the Plaintiff will suffer irreparable harm.

53. There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, is issued, will not disserve the public interest.

54. Plaintiff requests the Court award him his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct: a. Violating Title VII or the Civil Rights Act of 1964, 42 U.S.A. & 2000e, et seq., as described based on race, gender and religious adherents.

55. Such other practices, actions or conduct that the Court deems appropriate and proper to enjoin. WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## COUNT VI

### (Failure to follow Religious Adherence-Gilliam)

61

56. The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events and his Third Amended Complaint 1 through 105.

57. As a direct and proximate result of the foregoing conduct, the Plaintiff Gilliam has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of Shogren, Klinker Slam and others discrimination for not following their religious adherence.

58. The discriminatory actions were taken by the supervisory personnel within the VA in order to deprive Gilliam of employment and benefits of employment because of his failure to follow their or commonly known religious adherence (Adultery).

59. The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of its employee throughout November 25, 2011 till now.

60. The Third Amended Complaint referenced actions have created an intolerable hostile work environment.

61. The Defendant at all relevant times knew, or should have known, of the referenced discrimination against the Plaintiff.

62. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact ratified such conduct (Specifically Shogren should have known at the start the consequences of his covert and malicious actions against Gilliam).

63. The Defendant, through the Plaintiff's managers, supervisors and administrators, has engaged in, directed or **ratified conduct** and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

64. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among managers, supervisors and administrators at Bay Pines and Fort Myers that racial, gender and failure to follow religious adherence discrimination is an acceptable employment practice.

65. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Gilliam has been and continues to be denied his rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. & 2000e *et seq.*

66. As a result of the foregoing, Gilliam has been damaged. Those damages include, but are not limited to discipline, lost pay, loss of benefits, loss of training, loss of an amicable working environment, loss of career and professional opportunities, payment of attorneys' fees and legal costs, harm to professional reputation, humiliation, anxiety degradation, embarrassment, physical injury and severe emotional suffering. **Gilliam will continue in the future to suffer these damages absent relief from the Court.**

67. The Plaintiff has satisfied all conditions precedent to filing this suit or he has been prevented by the Defendant from satisfying such conditions precedent or he is excused under the law from satisfying any other conditions. WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

68. What started as a failure to follow Shogrens' and others religious adherence and then followed by a police- investigation expressing discrimination of two people and then a ratcheted up retaliation because of an EEOC contact; finally ended with a past known EEOC contact and a failure to heel to Klinkers religious adherence now coupled with Shogrens causing hostile work environment to unfortunately conclude with a wrongful termination for Gilliam.

69. The thing speaks for itself and the evidence is clear.

## DEMAND FOR A JURY TRIAL

70. The Plaintiff Edward Lee Gilliam hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

September 28, 2018

64

**DOCKET #75**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GILLIAM,

      Plaintiff,

v.                                    Case No: 2:16-cv-255-FtM-29UAM

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

      Defendant.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of defendant's Motion to Dismiss (Doc. #67) filed on August 31, 2018. Plaintiff filed a Response (Doc. #73) on September 28, 2018. For the reasons stated below, the motion is granted.

**I.    STANDARD OF REVIEW**

    Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v.

Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires
"more than an unadorned, the-defendant-unlawfully-harmed-me
accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must
accept all factual allegations in a complaint as true and take
them in the light most favorable to plaintiff, Erickson v. Pardus,
551 U.S. 89 (2007), but "[l]egal conclusions without adequate
factual support are entitled to no assumption of truth," Mamani v.
Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
556 U.S. at 678.  "Factual allegations that are merely consistent
with a defendant's liability fall short of being facially
plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th
Cir. 2012) (citations omitted).  Thus, the Court engages in a two-
step approach: "When there are well-pleaded factual allegations,
a court should assume their veracity and then determine whether
they plausibly give rise to an entitlement to relief." Iqbal, 556
U.S. at 679.

A pleading drafted by a party proceeding *pro se*, like the
Third Amended Complaint at issue here, is held to a less stringent
standard than one drafted by an attorney, and the Court will
construe the allegations contained therein liberally.  Jones v.

2

68

Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).
Nevertheless, "a pro se pleading must suggest (even if inartfully)
that there is at least some factual support for a claim; it is not
enough just to invoke a legal theory devoid of any factual basis."
Id. Thus, even a *pro se* complaint must allege facts showing that
each cause of action asserted is facially plausible.

## II.    BACKGROUND

Plaintiff Edward Lee Gilliam (Plaintiff) initiated this case
on April 4, 2016. (Doc. #1.) On January 31, 2017, the Court
dismissed his Complaint without prejudice for failure to pay the
requisite filing fee (Doc. #14), and on February 27, 2017,
Plaintiff filed a Second Amended Complaint (Doc. #17).[1] Defendant
then moved to dismiss the Second Amended Complaint for failure to
state a claim. (Doc. #25.)  The Court granted Defendant's motion
and dismissed Plaintiff's Second Amended Complaint without
prejudice.

On January 1, 2018, Plaintiff filed another Second Amended
Complaint, and Defendant once more moved to dismiss the Second
Amended Complaint for failure to state a claim. On August 3, 2018,
the Court granted Defendant's motion and dismissed Plaintiff's
Second Amended Complaint without prejudice. (Doc. #63.)  In that

---

[1] Although this complaint was actually Plaintiff's first
amended complaint, Plaintiff titled it as a Second Amended
Complaint.

3

Opinion and Order, the Court instructed Plaintiff that it would afford him "**one** last opportunity to file a **concise** Third Amended Complaint" that fixes the pleading deficiencies in his prior complaints.

On August 24, 2018, Plaintiff filed a Third Amended Complaint (Doc. #66), and Defendant has again moved to dismiss the pleading for failure to state a claim.

### III. THIRD AMENDED COMPLAINT

As best the Court can gather from the Third Amended Complaint (Doc. #66): In 2012, Plaintiff - a Protestant, Caucasian male of European descent - worked as a police officer at the the Fort Myers Outpatient Clinic (the Clinic) of the Bay Pines Veterans Administration (Bay Pines VA). Plaintiff believes that Bay Pines VA Police Chief Robert Shogren (Chief Shogren) and Lieutenant Pete Quimby (Lieutenant Quimby) orchestrated a scheme to sabotage Plaintiff's career at the VA by creating a disciplinary "paper trail against [him]," which ultimately resulted in the termination of Plaintiff's employment. (Id. p. 8.) On June 15, 2012, Plaintiff filed a request for "informal counseling" with an EEOC Counselor, and on September 14, 2012, Plaintiff attended a mediation session with Chief Shogren. (Id. pp. 17, 19.)

Mediation was ultimately unsuccessful, and on September 19, 2012, Chief Shogren issued Plaintiff a Proposed Removal of Employment letter (the Proposed Removal Letter), which charged the

4

following misconduct: (1) endangering the safety of a supervisor;
(2) conduct unbecoming of a police officer; (3) failure to follow
supervisory instructions; and (4) inappropriate conduct in the
workplace. (Id. pp. 19, 31-34.) The first charge relates to an
incident in June or July 2012 in which Plaintiff allegedly placed
Sergeant Slam in a chokehold. (Id. p. 34.) The second charge
deals with a heated argument between Plaintiff and Ms. Marsh at
the Clinic on April 26, 2012, which was overheard by Officer Ron
Testa. (Id. p. 33.) The third charge arises out of Plaintiff's
disobeying Lieutenant Quimby's order that Plaintiff have no
contact with Ms. Marsh during work hours. (Id. p. 32.) The fourth
charge is based on the allegation that Plaintiff and Ms. Marsh
engaged in sexual relations on VA property. (Id. p. 31.)

On October 12, 2012, Plaintiff met with Bay Pines VA Director
Susanne Klinker (Director Klinker) to discuss the charges in the
Proposed Removal Letter. (Id. p. 20.) Director Klinker ultimately
upheld the charges and terminated Plaintiff's employment on
October 27, 2012. (Id. p. 19.) This lawsuit followed.

### IV. MOTION TO DISMISS

Plaintiff asserts claims against Defendant for numerous
violations of Title VII of The Civil Rights Act of 1964, 42 U.S.C.
§ 2000e et seq.[2] Defendant now moves to dismiss Plaintiff's Third

---

[2] Plaintiff also asserts a claim for violation of his Fourth
Amendment rights. In its previous Opinion and Order granting

5

Amended Complaint.  Defendant argues that Plaintiff has not alleged

facts necessary to state actionable claims under Title VII.   The

Court agrees.

## A.   Title VII Principles

Although the Third Amended Complaint cites only Title VII

generally, the Court will proceed under Section 2000e-16, which

applies to federal employers.   See Canino v. U.S. E.E.O.C., 707

F.2d 468, 472 (11th Cir. 1983) (observing that Section 2000e-16

"is the exclusive remedy for charges brought against federal

employers including reprisals"); see also 5 U.S.C. § 7703(a)(2).

As relevant here, that section mandates that "[a]ll personnel

actions affecting employees . . . in executive agencies . . . be

made free from any discrimination based on race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-16(a).

As explained in the Court's prior Opinion and Order (Doc.

#63, p. 8), the language in Section 2000e-16(a) is a bit different

from that contained in Title VII's anti-discrimination provision

---

Defendant's motion to dismiss (Doc. #38), the Court found it lacked
subject matter jurisdiction over Plaintiff's Fourth Amendment
claim because that claim was barred by sovereign immunity.   The
Court instructed Plaintiff that such claims barred by sovereign
immunity "should **not** be reasserted."  (Id. pp. 25-26.)  Although
Plaintiff now claims that he "is not intentionally disrespecting
the [Court's] Order to not further discuss crimes protected by
sovereign immunity," (Doc. #66, p. 8), he has clearly disregarded
the Court's order and reasserted such claims.  Because the Court
previously found Plaintiff's Fourth Amendment claim is barred by
sovereign immunity, the Court will not again address the merits of
that claim here, but will dismiss it with prejudice.

6

pertaining to private employers.  Although the Eleventh Circuit has not explicitly addressed whether Section 2000e-2(a) and Section 2000e-16(a) are legally equivalent, the Eleventh Circuit has "assume[d] . . . that the coverage is the same.  Putman v. Sec'y, Dep't of Veterans Affairs, 510 F. App'x 827, 829 (11th Cir. 2013).  Thus, in addressing the viability of Plaintiff's Title VII claims, the Court proceeds on the presumption that his claims under Section 2000e-16 are as actionable as they would be against a private employer under 42 U.S.C. § 2000e-2(a).

**B.   Discrimination – Disparate Treatment**

**1) Race, National Origin, and Gender**

The Court begins by considering Plaintiff's claim that the VA discriminated against him because of his gender (male), race (Caucasian), and national origin (European).

"Employment discrimination claims all require proof of discriminatory intent." Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1192 (11th Cir. 2016) (citation omitted).  Where no direct evidence of discriminatory intent exists, establishing "a prima facie case for disparate treatment in an employment discrimination case" requires the plaintiff to show that: "(1) []he is a member of a protected class; (2) []he was subjected to an adverse employment action; (3) h[is] employer treated similarly situated employees outside of h[is] protected class more favorably than []he was treated; and (4) []he was qualified to do the

7

job." Id. (citation omitted); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish the third factor, a plaintiff must identify a proper "comparator" – that is, someone who is "similarly situated" to the plaintiff "in all material respects." Lewis v. City of Union City, Georgia, ___ F.3d ___, 2019 WL 1285058, at *8 (11th Cir. Mar. 21, 2019)(internal quotation marks omitted).  If two employees are not similarly situated in all material respects, the "comparator[] [is] simply too dissimilar to permit a valid inference that invidious discrimination is afoot." Id. at *10.

"[A] plaintiff is not required to plead a prima facie case of discrimination in order to survive dismissal." McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 801 n.4 (11th Cir. 2014); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002)(holding that the prima facie standard in employment discrimination cases "is an evidentiary standard, not a pleading requirement"). Nonetheless, the claim must still be "facially plausible," that is, it must "allow the court to draw the reasonable inference that [the defendant] [i]s liable for . . . [the] discrimination [charged]." Id. at 801.  Thus, while the failure to plead a particular discrimination element does not mandate dismissal, it can constitute grounds for dismissal where it is apparent that the plaintiff will never be able to carry his burden of proof on that

8

element.    See Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1254 (11th Cir. 2017).

Plaintiff alleges that "proof" of discriminatory intent for Plaintiff's race, national origin, and gender discrimination claims lies in the fact that he was fired for having an affair with Ms. Marsh, whereas Ms. Marsh - a Hispanic woman - was only suspended for three days.  However, as with Plaintiff's two prior race, national origin, and gender discrimination complaints, the instant claim is facially implausible because Plaintiff has failed to identify a viable comparator.  In fact, Plaintiff appears to concede that Ms. Marsh is not an adequate comparator "because they worked at different departments within the Veteran Affairs," but asserts this "inflexible and t[oo] rigid" rule is "absurd in reasoning" and should not foreclose Plaintiff's claim.  (Doc. #66, p. 10.)  While Plaintiff may take issue with the state of the law, the Court is nonetheless bound by it.  And because Plaintiff has failed to identify an adequate comparator, his race, national origin, and gender discrimination claims are facially implausible. Lewis, ___ F.3d ___, 2019 WL 1285058, at *10; Lathem, 172 F.3d at 793.

### 2) Religion

As to the religious discrimination claim, Plaintiff asserts that he - a Protestant - was stigmatized for committing adultery and behaving "like a heathen according to [Director Klinker's]

9

Catholic faith." (Doc. #66, p. 24.) In support thereof, Plaintiff cites a conversation in which Sergeant Slam stated he no longer wanted to have theological discussions with Plaintiff because Plaintiff "was divorced and living in sin with staff member Liz Marsh . . . ." (Id. p. 28.) In further support of his religious discrimination claim, Plaintiff alleges that Sergeant Slam hid Plaintiff's car keys and locked Plaintiff out of his office. (Id. p. 26.) Plaintiff also points to his pre-termination hearing with Director Klinker, during which she corrected Plaintiff's miscategorization of Mr. Marsh as Ms. Marsh's "ex-husband" (which he was not yet) in an "emphatic seething tone" while looking at Plaintiff with "a piercing glare . . . ." (Id. p. 27.) According to Plaintiff, this demonstrated that her attitude towards Plaintiff and her decision to terminate Plaintiff's employment were religiously motivated.

Plaintiff's claim is one of discrimination due to religious "nonadherence," rather than a typical disparate treatment claim. A religious nonadherence claim alleges that the failure to conform one's religious beliefs and/or conduct to an employer's pious expectations resulted in an adverse employment action. See e.g. Noyes v. Kelly Servs., 488 F.3d 1163, 1168-69 (9th Cir. 2007); Shapolia v. Los Alamos Nat. Lab., 992 F.2d 1033, 1037-38 (10th Cir. 1993); cf. Young v. Sw. Sav. & Loan Ass'n, 509 F.2d 140, 141 (5th Cir. 1975) ("Congress, through Title VII, has provided the

courts with a means to preserve religious diversity from forced
religious conformity.").

A plaintiff alleging religious discrimination usually must
establish the same multi-factor prima facie case discussed *supra*.[3]
Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1305 (11th
Cir. 2002).    However, several Circuit Courts of Appeals have
employed a more relaxed prima facie standard for nonadherence
claims.    Shapolia, 992 F.2d at 1038; Noyes, 488 F.3d at 1168-69.
Under this standard,

> in order to establish a prima facie case in
> actions where the plaintiff claims that he was
> discriminated against because he did not share
> certain religious beliefs held by his
> supervisors, . . . the plaintiff must show (1)
> that he was subjected to some adverse
> employment action; (2) that, at the time the
> employment action was taken, the employee's
> job performance was satisfactory; and (3) some
> additional evidence to support the inference
> that the employment actions were taken because
> of a discriminatory motive based upon the
> employee's failure to hold or follow his or
> her employer's religious beliefs.

Shapolia, 992 F.2d at 1038; see Noyes, 488 F.3d at 1168 (finding
"instructive" Shapolia's treatment of "non-adherence" religious
discrimination claims).

Regardless of which prima facie standard the Court applies,
the Third Amended Complaint does not plead a plausible religious

---

[3] The plaintiff must also "present . . . evidence that the
decision-maker knew of his religion" or beliefs.    Lubetsky, 296
F.3d at 1306.

11

77

discrimination claim. First, Plaintiff has not alleged that he

was treated worse than a non-Protestant, and thus has not pled a

"routine" disparate treatment claim.[4] Second, as the Court noted

in its previous Opinion and Order (Doc. #63, p. 16), while

Plaintiff may have been upset by Sergeant Slam's refusal to

continue engaging in theological conversations, that refusal does

not constitute an "adverse employment action" – that is, "a *serious*

*and material* change in the terms, conditions, or privileges of

employment." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th

Cir. 2001) ("[T]he employee's subjective view of the significance

and adversity of the employer's action is not controlling; the

employment action must be materially adverse as viewed by a

reasonable person in the circumstances.").

Moreover, Sergeant Slam's alleged hiding of Plaintiff's keys

and locking Plaintiff out of his office is insufficient to support

an inference that Sergeant Slam's actions "were taken because of

a discriminatory motive" based upon Plaintiff's nonadherence.

Shapolia, 992 F.2d at 1038. And while Director Klinker's

termination of Plaintiff's employment with the VA was certainly an

adverse employment action, Burlington Indus., Inc. v. Ellerth, 524

U.S. 742, 761, (1998), her "piercing glare" and the "emphatic

seething tone" she allegedly used when discussing the Marshs'

---

    [4] The Third Amended Complaint contains no mention of Ms.
Marsh's religion, if any.

marital status is insufficient to permit an inference that she fired Plaintiff because he did not hold or adhere to her religious beliefs.

## C.   Hostile Work Environment - Religious Harassment

Plaintiff also asserts a Title VII hostile work environment claim based on religious harassment. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotation and citation omitted). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(internal quotation omitted). A "[plaintiff] cannot make actionable ordinary workplace tribulations by turning a 'personal feud' between [him]self and a coworker into a Title VII religiously hostile work environment claim." Alhallaq v. Radha Soami Trading, LLC, 484 F. App'x 293, 296 (11th Cir. 2012).

Even reading the Third Amended Complaint liberally, the Court can find only one factual allegation[5] supporting Plaintiff's

---

[5] In support of his hostile work environment claim, Plaintiff also asserts that he was forced to undergo investigation, "thwarted

13

hostile work environment claim: Sergeant Slam's refusal to discuss religion with Plaintiff because Plaintiff was "divorced and living in sin." (Doc. #66, p. 28.) Again, while this may have truly offended Plaintiff, it is not sufficient to allege a facially plausible hostile work environment claim based on religious harassment. See Alhallaq, 484 F. App'x at 296 (affirming dismissal of religious harassment claim brought by Muslim plaintiff who was subjected to constant Christian gospel music, called "dirty," and told to "burn in Hell," since such conduct — "albeit rude and insensitive" — was not "sufficiently severe or pervasive"). Indeed, Sergeant Slam's decision to *not* discuss religion with Plaintiff seems the very opposite of religious harassment.

**D. Retaliation**

Lastly, Plaintiff asserts that a "culture of retaliation" developed after he sought informal counseling with the EEOC on June 15, 2012. (Doc. #66, p. 30.) Defendant argues that Plaintiff cannot establish the requisite causal link between his protected activity and the adverse employment action. The Court agrees.

To establish a prima facie case of retaliation under Title VII, "a plaintiff must prove that he engaged in statutorily

---

from contacting the EEOC, wrongfully accused of meeting with [his] girlfriend outside breaks and lunches, [and] was told by Detective Tim Torain he would never wear a police badge again." (Doc. #66, p. 28.) Plaintiff, however, alleges no facts plausibly indicating that any of these events were religiously motivated.

14

protected activity, he suffered a materially adverse action, and
there was some causal relation between the two events." Goldsmith
v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)
(citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53
(2006)). The "filing of an EEOC claim is a statutorily protected
activity." Burgos v. Napolitano, 330 F. App'x 187, 189 (11th Cir.
2009) (quotation and citation omitted).

Where "temporal proximity" is the only evidence of a "causal
relation" offered, that proximity must be "very close" to allow an
inference of causation. Clark Cty. Sch. Dist. v. Breeden, 532
U.S. 268, 273 (2001) (citations omitted); Grier v. Snow, 206 F.
App'x 866, 869 (11th Cir. 2006). Four months — even three months
— is too long. See e.g. Breeden, 532 U.S. at 273; Thomas v. Cooper
Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Importantly,
however, the proximity clock begins to run on the date the
decision-maker gains "knowledge of [the] protected activity," not
on the date the plaintiff engages in protected activity. Breeden,
532 U.S. at 273; see also Smith v. City of Fort Pierce, Fla., 565
F. App'x 774, 778 (11th Cir. 2014).

The Third Amended Complaint, like the Second Amended
Complaint, is unclear as to when Director Klinker first learned
that Plaintiff had filed an EEO complaint.[6] In the end, that fact

---

[6] Plaintiff asserts that Director Klinker learned that he
filed an EEO complaint in June of 2012, yet he provides a quote in

15

does not matter.  Even if she found out shortly before she decided

to sustain the charges and terminate Plaintiff's employment with

the VA, those charges had indisputably already been levied against

Plaintiff and his removal proposed.[7]  In other words, in deciding

to fire Plaintiff, Director Klinker was merely "proceeding along

lines previously contemplated."  Breeden, 532 U.S. at 272.  That

fact negates any possibility of causality based on temporal

proximity.   Id.; see also Smith, 565 F. App'x at 779 (no

retaliatory causation where employer "had already contemplated

disciplining [plaintiff] before she filed her Charge").  Since the

Third Amended Complaint contains no other facts from which the

Court may plausibly infer causation, Plaintiff's retaliation claim

is dismissed.

    In its previous Opinion and Order (Doc. #63, pp. 21–22), the

Court detailed the Second Amended Complaint's deficiencies,

provided Plaintiff with specific instructions on how to comply

with the Federal Rules, and instructed Plaintiff that the Court

would afford him one last opportunity to file a legally sufficient

complaint.   However, Plaintiff has failed to resolve those

---

which Director Klinker states she "do[es] not recall." (Doc. #66,
p. 22.)

    [7] The September 19, 2012 Proposed Removal Letter was issued
more than three months after Plaintiff sought EEOC counseling,
thus falling outside the causation proximity window.

16

deficiencies and has again filed an insufficient pleading. Because permitting Plaintiff another opportunity to file an amended complaint would be futile, the Third Amended Complaint is dismissed with prejudice. See <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001)(noting that a district court need not allow further amendments "where amendment would be futile" (citation omitted)).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. #67) is **GRANTED** and the Third Amended Complaint (Doc. #66) is **dismissed with prejudice.**

2. The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___27th___ day of March, 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties and Counsel of record

17

83

**DOCKET #78**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

EDWARD LEE GILLIAM,

    Plaintiff,

vs.                                          Case No: 2:16-CV-255-FTM-29UAM

U.S. DEPARTMENT OF VETERANS AFFAIRS,

    Defendant,

## MOTION FOR REASON WHY CERTAIN PARTS

## OF THE

## PLAINTIFF'S EVIDENCE IGNORED

1. It appears the (U.S Assistant Attorney David P. Sullivan) Defendant's request for dismissal was read word for word and agreed upon by the court; but (Pro Se') Edward Lee Gilliam's "PLAINTIFFS REBUTTAL TO MOTION TO DISMISS THIRD AMENDED COMPLAINT-PLAINTIFF'S RESPECTFUL DEMAND FOR A JURY TRIAL" was completely ignored by the court according to the **Opinion and Order.**

2. The Plaintiff's "Rebuttal" clearly referenced on page 4 paragraph 10 if read and acknowledged. "The Plaintiff incorporates and realleges this Rebuttal, Documentation of Case Events and his Third Amended Complaint 1 through 105." These three documents are the totality of the whole or complaint, as the rebuttal was a further development of the complaint as the Plaintiff attempted to answer the Defendants response and request for dismissal of the preliminary Third Amended Complaint before trial.

3. Note: the Documentation of Case Events has been added to the record. This is important evidence because Mr. Gilliam recorded his interpretation immediately after

each of the four fact-findings against him. This documentation is completely ignored by the court, as was the Plaintiff's Rebuttal.

4. **This was most definitely a Wrongful Termination!** A termination so severe that the Defendant had to claim Sovereign Immunity to protect the many Veterans Affairs staff members involved, including VA Attorney Karen Mulcahy because of all their high crimes and misdemeanors committed against Plaintiff Edward Lee Gilliam. This court robotically ignores this egregious fact. The Plaintiff respectfully states we are not machines that can just ignore this felonious fact and all its implications it contributes to this case, and to do so would be unreasonable and ridiculous.

5. On July 27, 2018, during Mr. Gilliam's seven hour and fifteen minute deposition he stated to the Defendant to the effect he could stack all his allegations to the ceiling against him and it would not matter in court; because it was all tainted from the start and he would prove it to a jury! The reason the allegations are all tainted is that Chief Robert Shogren accepted allegations of adultery and sex on VA property by a soon to be ex-husband and **concealed** these personally damaging allegations from the Plaintiff for ten months. Jeff Marsh bent on revenge against Mr. Edward L. Gilliam and Liz Marsh therefore, delivered to staff member Gina Birchtold a false allegation intending on sabotaging Police Officer Gilliam's twenty-one year federal career, along with Jeff's soon to be ex-wife; **a subtext undermining this entire case!**

6. Instead of **promptly** confronting Officer Gilliam and solving, the problem Chief Shogren concealed the salacious allegation of adultery and sex on VA property from both Mr. Gilliam and Ms. Marsh for ten hostile months! The supervisors of both Mr. Gilliam and Ms. Marsh were understandably inflamed by these allegations and instructed to watch the mixed couple and report any activity! **Therefore, it is easy to see this is what led to all the other tainted allegations later made against Mr. Gilliam.** The later contact with the EEOC only aggravated the situation. A child could see this; for the thing speaks for itself and the evidence is clear regardless if Non Adherence to Religious beliefs motivated it or not the act itself is still **wrong!**

7. The supervisor's tainted mindset and prejudiced behavior, manifested a retaliation causing a hostile work environment, and extreme mental anguish for <u>Mr. Gilliam who did not know what was going on for ten hostile months.</u> He only recognized this pattern, practice and <u>culture of retaliation</u> attacking him; that had previously been a <u>culture of friendliness</u>. Because of the willful actions of the Defendant and its administrators, managers and supervisors, **and as a proximate cause thereof**, Mr. Gilliam has been and continues to be denied his rights to equal employment opportunity in violation for the Civil Rights Act of 1964, as amended, 42 U.S.C. & 2000e et seq.

8. **As a result of the foregoing, Mr. Gilliam has been damaged**. Those damages include, but are not limited to discipline, lost pay, loss of benefits, loss of training, loss of an amicable working environment, loss of career and professional opportunities, payment of attorneys' fees and legal costs, loss of pension, harm to professional reputation, humiliation, anxiety, degradation, embarrassment, physical injury and severe emotional suffering. **Mr. Gilliam will continue in the future to suffer these <u>damages absent relief from the court. With all due respect, to dismiss this case with prejudice is a _heinous injustice_!</u>** Note: Chief Robert Shogren tainted this entire case by pitting the supervisory staff against two individuals who were unaware of the reason why the friendly culture changed to one of retaliation; for ten excruciating months.

9. <u>**The court has not ever addressed this issue; and the Plaintiff is respectfully asking why? Does it not taint the entire case understanding Chief Shogren baited the supervisory staff to target and attack Officer Gilliam unawares for ten months? Does this not reveal a conspiracy to set up Mr. Gilliam for termination?**</u>

10. The Plaintiff reasonably believes this is <u>prime facie evidence</u> that convicts the Veterans Affairs of **_guilt_** for committing a **severe Wrongful Termination**. This is an **irrefutable** <u>fact from the **start** and was the **undercurrent cause of all the surface effects** that led to **Officer Gilliam's Wrongful Termination!**</u>                Respectfully submitted,

                                                            _____

                                                            April 1, 2019

**DOCKET #81**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GILLIAM,

      Plaintiff,

v.                   Case No:  2:16-cv-255-FtM-29UAM

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

      Defendant.

---

**OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion for
Reason why Certain Parts of the Plaintiff's Evidence Ignored (Doc.
#78) filed on April 1, 2019, which the Court construes as a motion
for reconsideration. For the reasons set forth below, the motion
is denied.

I.

"Reconsideration of a Court's previous order is an
extraordinary remedy and, thus, is a power which should be used
sparingly." Am. Ass'n of People With Disabilities v. Hood, 278
F. Supp. 2d 1337, 1339 (M.D. Fla. 2003)(citation omitted). "The
courts have delineated three major grounds justifying
reconsideration: (1) an intervening change in controlling law; (2)
the availability of new evidence; (3) the need to correct clear
error or prevent manifest injustice." Sussman v. Salem, Saxon &
Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994).

## II.

Plaintiff seeks reconsideration of the Court's Opinion and
Order (Doc. #75) because he believes the Court committed clear
error when it "completely ignored" plaintiff's response in
opposition and plaintiff's Documentation of Case Events.   (Doc.
#78, p. 1.)   Plaintiff argues that if the Court had considered
these documents, the Court would have found "irrefutable" evidence
of "a severe [w]rongful [t]ermination" and thus would have denied
defendant's motion to dismiss.   The Court finds no merit in this
argument.

Plaintiff's response simply contains bare legal conclusions
and recounts the elements of each cause of action asserted in the
Third Amended Complaint.  ·Thus, the response failed to demonstrate
how the Third Amended Complaint set forth any viable causes of
action.   See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (To avoid
dismissal, "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."
(citation and quotation omitted)); Mamani v. Berzain, 654 F.3d
1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate
factual support are entitled to no assumption of truth." (citations
omitted)).

As to plaintiff's Documentation of Case Events, this document
is comprised of plaintiff's commentary and his interpretation of
the timeline of events leading up to this lawsuit.   Like the

- 2 -

response, the Documentation of Case Events failed to set forth
sufficient factual allegations "to raise [plaintiff's] right to
relief above the speculative level." Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007).

Plaintiff also asserts that the Court "robotically ignores"
the "egregious fact" that defendant asserted a sovereign immunity
defense to avoid liability for its "high crimes and misdemeanors
committed against Plaintiff." (Doc. #78, p. 2.) Plaintiff has
set forth no basis for reconsideration of the Court's finding as
to sovereign immunity – aside from his belief that its application
is "unreasonable and ridiculous." (Id.) The Court therefore need
not again address the merits of defendant's sovereign immunity
defense.

For the foregoing reasons, the Court finds that plaintiff has
failed to identify a "need to correct clear error or prevent
manifest injustice." Sussman, 153 F.R.D. at 694. Plaintiff's
motion is therefore denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Plaintiff's Motion for Reason why Certain Parts of the
Plaintiff's Evidence Ignored (Doc. #78) is **DENIED**.

- 3 -

**DONE and ORDERED** at Fort Myers, Florida, this ___18th___ day of April, 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties and Counsel of Record

- 4 -

**DOCKET #82**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

EDWARD LEE GILLIAM,

Plaintiff,

vs.

Case No: 2:16-CV-255-FTM-29UAM

U.S. DEPARTMENT OF VETERANS AFFAIRS,

Defendant,

# MOTION FOR THE RECORD AND COURT RECONSIDERATION

1. A Pattern, Practice and Culture of Retaliation against all those employees who contact the EEOC is an established fact at the Bay Pines/Fort Myers Veterans Affairs; but the court's opinion is except for Mr. Edward Lee Gilliam's Case! The question arises how this can be.

2. This documented fact of a hostile Pattern, Practice and Culture of Retaliation for any employee who contacts the EEOC; is largely established by a class action civil suit that was settled by the VA having to pay out approximately one million dollars to multiple (comparators) police officers, doctors, nurses and other administrative personnel between the years of 2010 and 2014. This fact and its correlation to the Plaintiff's Case has not been fully addressed by this court.

3. Please understand Mr. Gilliam's Case took place between the years 2011 and 2012 during these VA "admitted" years of a Pattern, Practice and Culture of Retaliation against any employee contacting the EEOC and this retaliatory conduct coming from the VA Administration was in existence at the very time when Mr. Gilliam contacted the EEOC in his individual case. For the record, Mr. Gilliam was not aware of his case 2011 thru 2012 being within this ongoing case 2010 thru 2014 for a Pattern, Practice and Culture of Retaliation for any employee who contacts the EEOC at the time.

4. This truth is a very important fact in the Plaintiffs Case and it is clearly documented evidence found in **Case 8:10-cv-01482-MSS-TBM**. It is on PACER and therefore the official record. The Plaintiff has referenced this most clarifying case as evidence to the court several times but the court continues to ignore this very fact. In addition, the court

97

ignores, Chief Robert Shogren concealed incendiary allegations against Mr. Gilliam for ten hostile months while alerting the supervisory staff to target him for removal, **tainting all allegations against Mr. Gilliam.**

5. The prima facie' evidence is Mr. Gilliam contacted the EEOC and Lizabeth Marsh did not. Mr. Gilliam was terminated and Ms. Marsh was not. However, the court fails to recognize Ms. Marsh as a valid comparator when it is in reference to discrimination. However, how could the court be in silence in reference to all the other police comparators for retaliation here who contacted the EEOC as did Mr. Gilliam and met with career ending or damaging results?

6. This fact is a strong and reasonable inference or probable cause that the contact with the EEOC was the reason for the retaliation, which led to Mr. Gilliam's wrongful termination along with all the others in the class action suit claiming the same.

7. Once this fact is acknowledged that this type of hostile work environment existed for, any employee who contacted the EEOC against the VA Administration was met with a pattern, practice and culture of retaliation and corroborated by an ongoing class action civil suit, which confirms the same. It is plain to see Mr. Gilliam was just another victim of the VA Administrations typical Pattern, Practice and Culture of Retaliation because he also as in the Class Action Civil Suit contacted the EEOC which led to his wrongful termination.

8. Mr. Gilliam respectfully asks the court how can the court's Opinion and Order be that Mr. Gilliam was not also, a victim of the VA "admitted" ongoing Pattern, Practice and Culture of Retaliation against any employee who contacts the EEOC? This is a severe and obvious violation of the Civil Rights Act of 1964 as amended, 42 U.S.C. & 2000e et seq.

9. The Tampa Federal Court is in conflict with the Fort Myers Federal Court in reference to the Veterans Affairs "admitted" Pattern, Practice and Culture of Retaliation against "any employee" contacting the EEOC against the VA Administration. The Tampa Court Case acknowledges the Veteran Affairs violation of the Civil Rights Act of 1964 during the same time of Officer Gilliam's Case but the Fort Myers Federal Court fails to acknowledge the same. NOTE: THE FORT MYERS CBOC VA FALLS UNDER THE SAME ADMINISTRATION AS BAY PINES.

10. How can this be that an "admitted" Bay Pines Veterans Affairs Pattern, Practice and Culture of Retaliation against employees contacting the EEOC existed in Bay Pines-Tampa but not with Mr. Gilliam in Fort Myers? The answer is it could not. Thank you for your reconsideration.

Respectfully submitted,

_____

April 25, 2019

**DOCKET #83**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GILLIAM,

      Plaintiff,

v.                                      Case No:  2:16-cv-255-FtM-29UAM

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

      Defendant.

---

**ORDER**

    This matter comes before the Court on plaintiff's Motion for the Record and Court Reconsideration (Doc. #82) filed on April 25, 2019.  For the reasons set forth below, the motion is denied.

    On March 27, 2019, the Court dismissed plaintiff's Third Amended Complaint with prejudice because plaintiff failed to state a legally sufficient cause of action.  (Doc. #75.)  On April 1, 2019, plaintiff filed a motion for reconsideration, arguing the Court erroneously dismissed the Third Amended Complaint with prejudice.  (Doc. # 78.)  The Court denied plaintiff's motion because plaintiff failed to identify a "need to correct clear error or prevent manifest injustice."  Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994).  (Doc. #81, p. 3.)

    Plaintiff filed the instant motion on April 25, 2019 and again argues the Court erred in dismissing the Third Amended Complaint

with prejudice.  Plaintiff cites to the Middle District of Florida
case Atkinson v. U.S. Dep't of Veteran Affairs, 8:10-cv-01482-MSS-
TBM, which he describes as a retaliation law suit that was settled
by the Department of Veteran Affairs (the VA) and resulted in a
one million dollar judgment awarded to "police officers, doctors,
nurses and other administrative personnel between the years of
2010 and 2014" - the time period during which plaintiff alleges
the retaliation against him occurred at the VA.  Plaintiff argues
the  Court  "continues  to  ignore"  this  "clearly  documented
evidence,"  which  he  contends  supports  the  Third  Amended
Complaint's retaliation claims.  (Doc. #82, p. 1.)  Plaintiff also
argues  that  the  Court  "ignores"  that  "Chief  Robert  Shogren
concealed  incendiary  allegations  against  [Plaintiff]  for  ten
hostile months while alerting the supervisory staff to target him
for removal . . . ."  (Id., pp. 1-2.)

     The  existence  of  Atkinson  and  Plaintiff's  conclusory
allegations  regarding  Chief  Robert  Shogren  have  no  bearing  on
whether the Third Amended Complaint alleged a legally sufficient
cause of action.[1]  Thus, for the foregoing reasons, and for the

---

     [1] Plaintiff also appears to argue that the Court overlooks
the fact that the police officer plaintiffs in Atkinson are valid
comparators in support of the Third Amended Complaint's various
discrimination claims.  To plead a discrimination claim, however,
a plaintiff must identify a comparator who was treated "*more
favorably*" than []he was treated."   Trask v. Sec'y, Dep't of
Veterans Affairs, 822 F.3d 1179, 1192 (11th Cir. 2016)(emphasis
added)(citation omitted).  Plaintiff's citation to Atkinson does

- 2 -

reasons previously stated by the Court, Plaintiff has failed to identify a "need to correct clear error or prevent manifest injustice." Sussman, 153 F.R.D. at 694. Plaintiff's motion is therefore denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Plaintiff's Motion for the Record and Court Reconsideration (Doc. #82) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this ___6th___ day of May, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties and Counsel of Record

---

not alter the Court's previous finding that Plaintiff failed to identify such a comparator.

- 3 -

103

**DOCKET #84**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

EDWARD LEE GILLIAM,

     Plaintiff,

vs.                            Case No: 2:16-CV-255-FTM-29UAM

U.S. DEPARTMENT OF VETERANS AFFAIRS,

     Defendant,

## MOTION FOR NEED TO CORRECT CLEAR ERROR
## OR
## PREVENT MANIFEST INJUSTICE

1. The Court erred in dismissing the Plaintiff's Third Amended Complaint with prejudice and there is an urgent need to correct the clear error. With all due respect, the Court has misunderstood Mr. Edward Lee Gilliam's intent and purpose in the **ORDER** document 83. To begin with, the point is Chief Shogren concealing these inflammatory and salacious allegations from Officer Gilliam for ten (10) RETALIATORY and hostile months taints all the four charges against him, which appear to be pretextual in nature. These allegations were manifested against Officer Gilliam on September 25, 2012 in a proposed removal letter, only after Mr. Gilliam had contacted the EEOC on June 15, 2012.

2. Why are the four charges tainted? Because Mr. Shogren targeted VA Police Officer Gilliam. How, well Chief Shogren did not promptly contact Officer Gilliam about the allegations for ten months but alerted the supervisory staff that Officer Gilliam was having an affair and sex on VA property. This of course inflamed the supervisory staff to take retaliation against VA Police Officer Gilliam without him knowing what was going on. He only recognized a friendly culture change to a **culture of retaliation or reprisal** against him overnight and had to agonize why this was happening to him. The statement from the Court this has no bearing in reference to Mr. Gilliam's Third Amended Complaint is absurd in reasoning. Mr. Gilliam respectfully believes the Courts statement to be extremely arbitrary, and **is** a legally sufficient cause for action. This is clearly retaliatory and a reprisal in nature and therefore a violation of Officer Gilliam's Civil Rights Act of 1964 etc. How could this not be an EEOC protected class violation of **reprisal**?

3. The real issue at this point is not *discrimination* but reprisal or <u>RETALIATION</u> for any employee who contacts the EEOC. This fact and violation is confirmed between the years of 2010 and 2014 by a class action lawsuit. And once again, with Officer Gilliam's Case that occurred between 2011 through 2012, couched in between the 2010 through 2014 class action lawsuit.

4. <u>Atkinson v. U. S. Dep't of Veterans Affairs, 8: 10-cv-01482-MSS-TBM</u>, is prima facie' **evidence** of a correlation, corroboration and confirmation that this established Pattern, Practice and Culture of **reprisal** or RETALIATION for any employee who contacts the EEOC was on going at the same time Officer Gilliam contacted the EEOC especially within the VA Police Department. This same fact was analyzed the same in Mr. Gilliam's Third Amended Complaint and manifests a huge preponderance of evidence for the Court to glean from.

5. **Note:** <u>Mr. Gilliam did not use The Atkinson v. U. S. Dep't of Veterans Affairs Case as reference to MSA Liz Marsh as a comparator for *discrimination* as the Court has misstated.</u> This Court has misunderstood the Plaintiff's intent (please see page 2 footnote 1 on **ORDER** document #83). The Atkinson Case presents a **preponderance of evidence** of other VA Police Officer employees who contacted the EEOC that met with **reprisal** or <u>RETALIATION</u> not as this Court has stated as for "*discrimination*" a completely different protected class and that makes a big difference for this courts consideration! Mr. Gilliam is reasonably requesting the Court to please acknowledge Officer Gilliam individually contacted the EEOC under the same administration and period of time as the Atkinson Class Action lawsuit, and was targeted by the same Administration as the nine (9) other VA Police Officers.

6. The Court has **not** acknowledged this fact documented in Mr. Gilliam's Third Amended Complaint, but seems to completely overlook it or responds arbitrarily with a perfunctory, "I disagree" with no analytical reason why. **The argument the Plaintiff is making is in reference to <u>RETALIATION</u> not discrimination, as the Court seems to think.** Moreover, the Pattern, Practice and Culture of RETALIATION against any employee who contacted the EEOC is **EVIDENCE** for the fact it was on going from 2010 through 2014. <u>Point being, this illegal corrupt retaliation was active during Officer Gilliam's Case when he contacted the EEOC on June 15, 2012; and is presented in his Third Amended Complaint, but was ignored. This is now a legally sufficient cause for the Courts action, because it is a clear violation of Mr. Gilliam's Civil Rights Act of 1964.</u>

7. An element to consider is MSA Liz Marsh did **not** contact the EEOC and only received a penalty of three days off without pay. <u>However, for clarifications sake the Plaintiff understands Ms. Marsh is not considered by this Court to be a valid comparator and the Plaintiff is not stating she is here.  Notwithstanding **she is bold and bright evidence for Mr. Gilliam receiving RETALIATION for contacting the EEOC**. (If one only follows the trajectory). And later fell prey to</u>

the Bay Pines Administration's on going legally documented Pattern, Practice and Culture of RETALIATION of Any Employee Contacting the EEOC between the years of 2010 and 2014; as documented in the Atkinson v. U. S. Dep't of Veteran Affairs Case. This case also contains evidence to support this is the **VA Administrations Modis Operandi** for removing an employee once he crosses the "Rubicon" and contacts the EEOC against them. Any employee who does is met with reprisal exactly as Officer Gilliam was when he individually contacted the EEOC in Fort Myers Florida. **Note:** a comparator is needed when the Civil Rights Act violation is **discrimination**. A comparator is **not** needed when the Civil Rights Act violation is **reprisal** as is and has been argued by the Plaintiff.

8. **A revealing and figurative illustration to make a point of understanding is as follows:** It is a documented fact that between the years of 2010 and 2014 any employee who contacted the EEOC at Bay Pines was "*poisoned*" by the administration afterwards (figuratively). On June 15, 2012 Officer Gilliam contacted the EEOC and was "*poisoned*" by the same administration. This stands to reason here. Several other employees at Bay Pines VA specifically in relation to this Case nine (9) other VA Police Officers contacted the EEOC and was "*poisoned*" by the same VA Administration after the fact, and is evidence.

9. The Tampa Federal Court (Case 8:10-cv-01482-MSS-TBM) **declared the same**. In addition, the VA Administration **admitted the same** by paying out a $1 million dollar settlement or relief and cure to the nine officers who had been "*poisoned*" by this corrupt and retaliatory VA Administration. This case stretches all the way from 2010 through 2014 and is a legally sufficient cause of action for reconsideration for the dismissal of this case with prejudice, if only rightly understood by the Court. The Atkinson v. U.S. Dep't of Veteran Affairs is **evidence** for Retaliation **not** Discrimination as this Court has misconstrued the Plaintiff presented in his Motion for the Record and Court Reconsideration and Third Amended Complaint (please see: **ORDER** Document 83 page 2, footnote: 1 for **the courts error and manifest injustice).**

10. However here and now, the Fort Myers Federal Court's Opinion and Order is that this same corrupt and guilty VA Administration in question did not "*poison*" VA Police Officer Gilliam the individual. So therefore, Mr. Gilliam will not receive any relief or cure from the VA Administrations retaliation. Even though there is, a fully documented account and class action civil suit on the record of the VA Administration "*poisoning*" nine VA Police Officers for contacting the EEOC. VA Police Officer Edward Lee Gilliam was also "*poisoned*" by the VA Administration for contacting the EEOC during this same time period. This fact stands to reason.

11. Note: all of this same argument can be found in VA Police Officer Ed Gilliam's Third Amended Complaint if not exact, in implication and is ready to be presented at a jury trial.

12. Moreover, for this Court to state Chief Shogren's malicious ten (10) month concealment of incendiary allegations against Officer Ed Gilliam while contacting his supervisory staff to target him did not create a Retaliatory and Hostile Work Environment is unreasonable to the point of absurdity. **This clearly is a flagrant act of reprisal!** In addition, if one choses to be arbitrary and not acknowledge this single fact well then couple it with even more preponderance of evidence by recognizing this Pattern, Practice and Culture of RETALIATION against any employee contacting the EEOC. Now to state this has no bearing on this Case at hand; is in comparison to stating a banana peel has no bearing on the substance of the banana in the center. One has to peel the banana to get to the substance.

13. All of Mr. Gilliam's arguments and then some can be found in his Third Amended Complaint. For example a Pattern Practice and Culture of RETALIATION is located on page 16 paragraph fifty (50) of his Third Amended Complaint but was either glossed over, misconstrued or completely ignored by this court.

14. The thing speaks for itself and the evidence is clear. The simple facts are as follows. **The four allegations against Officer Gilliam are tainted; and appear to be pretextual. A settled class action lawsuit for a Pattern, Practice and Culture of Retaliation against any employee who contacts the EEOC is already in the court record and that case more than corroborates Officer Gilliam's case against the Veteran Affairs, it confirms the preponderance of evidence.** This settled class action lawsuit is irrefutable evidence and is legally sufficient for a cause of action by the Court to reconsider Mr. Gilliam's civil suit against the Veterans Affairs. To think otherwise is unreasonable and arbitrary and is a manifestation of injustice, there is a need to correct clear error here! The Court previously misinterpreted the evidence of the class action lawsuit to be for discrimination but it in fact bolsters the claim for **reprisal** as Mr. Gilliam rightfully intended it too in his Third Amended Complaint and is a legally sufficient cause of action for the Court to correct this clear error to prevent manifest injustice!

15. *The Plaintiff is reasonably requesting the **Fort Myers Federal Court** to simply agree with the Tampa Federal Court and the VA Administration*. That a well established and court documented record of a Pattern, Practice and Culture of Retaliation against any employee contacting the EEOC did in fact exist at the Veteran Affairs and the VA Administration would **retaliate** against an employee for contacting the EEOC. ***This is established evidence and should not be overturned*** ! In addition, Officer Edward Lee Gilliam along with the other nine (9) VA Police Officers involved in the class action lawsuit contacted the EEOC all within the same parentheses of time and therefore **Officer Gilliam should rightfully be awarded relief and settlement as they were** or at least a requested jury trial. Thank you very much for your reconsideration in this very important life altering decision. Respectfully submitted for Justice and Honor.

_____

May 15, 2019

**DOCKET #85**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GILLIAM,

      Plaintiff,

v.                       Case No:  2:16-cv-255-FtM-29UAM

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

      Defendant.

_____

## ORDER

    This matter comes before the Court on plaintiff's Motion for Need to Correct Clear Error or Prevent Manifest Injustice (Doc. #84) filed on May 15, 2019.  Plaintiff seeks reconsideration of the Court's Order (Doc. #83) denying plaintiff's previous motion for reconsideration (Doc. #82).  The Court finds no basis for reconsideration, as plaintiff simply re-argues the same points set forth in his previous motions for reconsideration (Docs. ##78, 82) and his response in opposition to defendant's motion to dismiss (Doc. #73).  Plaintiff's motion is therefore denied.

    Accordingly, it is hereby

**ORDERED:**

    Plaintiff's Motion for Need to Correct Clear Error or Prevent Manifest Injustice (Doc. #84) is **DENIED**.

112

**DONE and ORDERED** at Fort Myers, Florida, this __13th__ day of June, 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties and Counsel of Record

- 2 -

113

## CERTIFICATE OF SERVICE

**I CERTIFY that on October 10, 2019 I respectfully submitted two copies to the United States Court of Appeals and one copy to Peter J. Sholl AUSA:**

### APPENDIX OF EDWARD LEE GILLIAM

**By USPS Marketing Mail to the following addresses:**

United States Court of Appeals
Eleventh Circuit
Office of the Clerk
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Peter J. Sholl, Assistant United States Attorney

Appellate Division
USA No. 082
400 N. Tampa St., Ste. 3200
Tampa, FL 33602

Edward Lee Gilliam

114